# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 07-22326-CIV-DIMITROULEAS/ROSENBAUM

JELD-WEN, INC., an Oregon corporation,
individually and as assignee of the claims of
Cardinal IG Company, a Minnesota
corporation,

          Plaintiff,

v.

NEBULA GLASSLAM INTERNATIONAL, INC.,
d/b/a "GLASSLAM" and "N.G.I., INC.," a
Florida corporation, and REICHHOLD, INC.,
a Delaware corporation, and STEPHEN HOWES,

          Defendants.

_____/

## *I.  INTRODUCTION*

This matter comes before the Court upon Plaintiff Jeld-Wen, Inc.'s Motion for Issuance of

a Protective Order [D.E. 81] and Defendants Nebula Glass International, Inc., and Reichhold, Inc.'s

Motion to Establish a Protocol for Field Inspections and Preservation of Evidence [D.E. 93].  The

Court has carefully reviewed the parties' Motions, all responsive and supporting filings thereto, the

record in this case, and has heard argument of counsel at a hearing held on February 4, 2008, on this

and other motions in this matter.  Additionally, the Court is otherwise fully advised in the premises

and, for the reasons articulated below, now **GRANTS IN PART and DENIES IN PART** both

Motions.

## II.  BACKGROUND

**A.  The Underlying Facts**

In this case, Plaintiff Jeld-Wen, Inc. ("Jeld-Wen"), an Oregon corporation, sues Defendants Reichhold, Inc. ("Reichhold"), a Delaware corporation, Nebula Glass International, Inc. ("Glasslam"), a Florida corporation, and Stephen Howes, the owner of Glasslam. D.E. 109-2, ¶¶1-4. Although the Second Amended Complaint alleges twenty different counts, the nucleus of facts giving rise to all of these claims centers around the delamination and yellowing of hurricane impact resistant glass sold by Plaintiff Jeld-Wen.

More specifically, Jeld-Wen entered into a contract with Glasslam under which Glasslam sold Jeld-Wen certain resin and other glass products and licensed to Jeld-Wen Glasslam's patented process of producing impact resistant glass, called Safety Plus 1 glass ("Safety Plus").  Jeld-Wen then manufactured windows and doors containing hurricane impact resistant glass made through the Safety Plus creation process, which involved sandwiching together a piece of glass, resin, a thin piece of polyethylene terephthalate polyester ("PET") film, more resin, and another piece of glass. When prepared properly with effective ingredients, the impact resistant glass was supposed to function for at least ten years.  Instead, however, Jeld-Wen's customers began experiencing Safety Plus failures in the form of delamination and discoloration of the glass well before ten years after installation had elapsed.

As it turned out, the resin Glasslam sold to Jeld-Wen was defective in that it either did not contain any ultraviolet light blocker, or it contained too little or ineffective versions of ultraviolet light blocker.  Additionally, the resin had not been cooked to the proper temperature.  Consequently, sunlight on the Safety Plus glass could cause the resin to fail, resulting in delamination and

discoloration.  Glasslam purchased the resin it sold to Jeld-Wen from Defendant Reichhold, which manufactured the product.

## B.  The Procedural History

### 1.  *Glasslam I*

Upon receiving complaints about delamination and discoloration from customers other than Jeld-Wen, Glasslam investigated and discovered the problems with Reichhold's resin.  *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1206 (11th Cir. 2006) ("*Glasslam I*").  Thus, in 2002, Glasslam filed suit against Reichhold for damages sustained as a result of Reichhold's defective resin.  *Id*.  The case fell to Judge Dimitrouleas, within this Court.

Before trial, this Court limited Glasslam to presenting at trial any future replacement claims unrelated to any of the specific customer complaints Glasslam had identified in its Rule 26, Fed. R. Civ. P., disclosures and interrogatory answers.  Accordingly, at the trial, this Court instructed the jury as follows: "Glasslam may only seek to recover damages for those specific claims which have been presented to you during this trial.  You should not consider at this time any damages for future claims which have not been specifically presented in this trial."  *Id*. at 1209.  The jury returned a verdict of $22,500,000.00 for Glasslam, which was comprised of $1,271,379.00 in out-of-pocket damages, $14,665.621.00 in unpaid customer claims, and $6,563,000.00 in lost profits.  *Id*. at 1207.  On appeal, the Eleventh Circuit affirmed the judgment.

### 2.  *Glasslam II*

Following the conclusion of *Glasslam I*, Glasslam filed a second lawsuit against Reichhold in Case No. 05-60704-CIV-DIMITROULEAS (S.D. Fla.) ("*Glasslam II*").  In that action, Glasslam sought compensation for damages incurred as a result of Reichhold's defective resin, relating to glass

not claimed in *Glasslam I*. Towards this end, Glasslam alleged six counts in its complaint, including the following three: breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty (Count III).

In its Order on the parties' cross-motions for summary judgment, the Court held that Reichhold was collaterally estopped from re-litigating the breach-of-duty elements of Counts I, II, and III. *Glasslam II*, D.E. 108, p. 14. Rather, the ultimate fact determined in *Glasslam I* – that Reichhold's resin was defective – could not be disturbed and continued to bind the parties. *Id.* "Whether the defective resin was the proximate cause of the particular claims for the particular windows" at issue in *Glasslam II*, however, was not litigated, and, thus, remained for trial. *Id.* at p. 16.

Instead of proceeding to trial, however, the parties settled the matter and entered into a stipulation of dismissal with prejudice. *Glasslam II*, D.E. 132. Accordingly, the Court dismissed the action with prejudice. *Glasslam II*, D.E. 134.

### 3. *Jeld-Wen I*

Before Glasslam and Reichhold settled *Glasslam II*, Jeld-Wen sued Glasslam, among others, in Case No. 05-60860-CIV-DIMITROULEAS (S.D. Fla.) ("*Jeld-Wen I*"). Glasslam then filed a third-party complaint against Reichhold in that action. *Jeld-Wen I*, D.E. 32.

In *Jeld-Wen I*, Jeld-Wen alleged seven counts against Glasslam, including the following three: breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty of merchantability (Count III). *Jeld-Wen I*, D.E. 1. Glasslam, in turn, alleged eight claims against Reichhold, including, among others, breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty (Count III). *Jeld-Wen I*, D.E. 305, p. 6.

To address delamination of the Safety Plus glass, Jeld-Wen instituted a process by which it received customer complaints and then scheduled inspections of all Safety Plus glass in the windows and doors of the structure. *Jeld-Wen I*, D.E. 74, p. 3. If delamination existed, Jeld-Wen established a time for repair and replacement of the glass at issue. *Id.* Jeld-Wen originally invited representatives of the *Jeld-Wen I* defendants to attend the initial inspections under certain rules set forth by Jeld-Wen, which Jeld-Wen stated that it created in order to minimize disruption to its customers. *Id.* Reichhold agreed to the protocol but reserved the right to conduct further discovery in the future. *Id.* Because Jeld-Wen received a customer complaint about being contacted by an attorney for Reichhold after the scheduled inspection, Jeld-Wen sought the issuance of a protective order to preclude the *Jeld-Wen I* defendants from contacting Jeld-Wen's customers for any purpose except through Jeld-Wen's attorneys, and then, only for necessary discovery. *Id.* at p. 2.

Meanwhile, Reichhold complained that Jeld-Wen's adopted protocol unfairly limited discovery, violated the Federal Rules of Civil Procedure, and interfered with Reichhold's ability to defend itself. *Jeld-Wen I*, D.E. 71, pp. 1-2. Hence, Reichhold sought a protective order from the Court staying Jeld-Wen's scheduled inspections, repairs, and replacements of allegedly defective glass because, according to Reichhold, Jeld-Wen did not provide "proper notice and fair opportunity" for Reichhold to participate in and attend such activities. Reichhold also contended that, in the absence of Reichhold's agreement to Jeld-Wen's adopted protocol, Jeld-Wen sought to preclude Reichhold's attendance at inspections, repairs, and replacements. *Id.* at 2. Reichhold further objected to Jeld-Wen's alleged refusal to provide Reichhold with a list of all inspection, repair, and replacement projects so that Reichhold could conduct its own third-party discovery by using third-party subpoenas. *Id.* at 3.

By Order dated July 11, 2006, this Court simultaneously resolved Jeld-Wen and Reichhold's motions for protective orders. *Jeld-Wen I*, D.E. 76, p. 2. More specifically, the Court denied Reichhold's request for a stay of Jeld-Wen's repairs of its customers' windows and doors, but it required Jeld-Wen to retain all windows removed from its customers' buildings through the date of the order and to note the locations from which the glass was removed. *Id.* Additionally, the Court denied Reichhold's request to prohibit Jeld-Wen from unilaterally initiating contact or communicating with its customers. *Id.* As to Jeld-Wen's motion for protective order, the Court precluded all defendants from making contact with Jeld-Wen's customers or otherwise seeking separate inspection of Jeld-Wen's customers' laminated windows until after Jeld-Wen completed the repairs of the affected windows. *Id.* The Court further established a protocol to be followed when Jeld-Wen scheduled repairs of its customers' windows. Pursuant to this protocol, all parties were to receive notice of such repairs and to be permitted to attend such repairs under the conditions established by the Court in its Order. Finally, the Court authorized formal and informal third-party discovery only after Jeld-Wen completed repairs on the targeted customer's property. *Id.* at 3-4. In so directing, the Court expressly noted that the restriction was "meant to protect Jeld-Wen's customers from unnecessary contact and to preserve Jeld-Wen's relationships with its customers." *Id.* (citations omitted); *see also Jeld-Wen I*, D.E. 245, p. 2.

Pursuant to the protocol, Jeld-Wen notified the *Jeld-Wen I* defendants of repairs it conducted after the Court's July 11, 2006, Order. As the discovery cut-off in the case approached, however, it became obvious that Jeld-Wen was not going to be able to complete repairs on all of the properties for which it was seeking damages. Consequently, prior to trial, Reichhold moved to preclude Jeld-Wen from asserting claims at trial for any properties for which Jeld-Wen failed to complete repairs

-6-

by the close of discovery. *See* D.E. 172. Alternatively, Reichhold requested that the Court amend its July 11, 2006, Order creating the protocol to permit Reichhold to conduct formal and informal discovery on any of Jeld-Wen's customers, regardless of whether the intended repairs had been made. *Jeld-Wen I*, D.E. 245, p. 3.

Because Reichhold's alternative motion became ripe only two weeks before the end of discovery and approximately eighty Jeld-Wen customers' homes remained to be inspected, the Court found Reichhold's alternative motion to be moot since Reichhold could not have completed discovery on all of the remaining properties within the two weeks of the discovery period left. *Jeld-Wen I*, D.E. 245, p. 3. As for the remaining aspect of Reichhold's motion, the Court chose to interpret it as a motion *in limine* to preclude Jeld-Wen from presenting claims for any properties that were not repaired by the discovery deadline. *Id.*

In considering the substance of the motion *in limine*, Magistrate Judge Torres found Judge Dimitrouleas's summary judgment decision in *Glasslam II* to be significant. In that decision, Judge Dimitrouleas concluded that although collateral estoppel precluded reconsideration of the findings with respect to breach-of-warranty claims against Reichhold, causation remained very much an issue. *Id.* at 4. Indeed, Magistrate Judge Torres noted that Jeld-Wen could not "merely use an average cost to repair and multiply that number by the number of defective units to come up with a damages calculation." *Id.* at 5-6. Rather, Jeld-Wen had to prove causation of damages with respect to each window for which it sought damages because causation potentially differed from window to window, and Jeld-Wen's damages arguably could have resulted from design problems, mold, water intrusion, wood rot, and other possible causes of delamination in the relevant windows, in addition to or instead of the defectiveness of Reichhold's defective resin. *See id.* at 4-5.

-7-

As causation continued to be a factor to be proven with respect to each window at issue in *Jeld-Wen I*, Magistrate Judge Torres held that the defendants could be required to defend against claims for particular windows only where they had been provided with the opportunity to conduct discovery with respect to the windows in question. *Id.* at 10.  Noting that, in direct response to Jeld-Wen's motion seeking to preclude Defendants from contact with Jeld-Wen's clients, the Court had limited Defendants to conducting formal and informal third-party discovery with regard to only those windows where Jeld-Wen had completed inspections, repairs, and replacements, the Court ruled that Jeld-Wen could seek damages in the *Jeld-Wen I* trial only with respect to that same universe of windows. *Id.*  In so directing, the Court expressly pointed out that Jeld-Wen remained free to pursue its claims in a subsequent action for other windows not inspected, repaired, and replaced by the close of the discovery period. *Id.* at 8.  Thus, the Court based its ruling on the fact that under the terms of the Jeld-Wen-pursued protocol imposed by the Court in the July 11, 2006, Order, Defendants, through no fault of their own, had not received the opportunity to conduct discovery on windows that had not been inspected, repaired, or replaced by the close of discovery. *Id.*  Indeed, the terms of the July 11, 2006, Order Jeld-Wen obtained from the Court explicitly precluded Defendants from engaging in any discovery, formal or informal, other than attending the inspections, repairs, and replacement scheduled by Jeld-Wen, at homes where Jeld-Wen had not first completed the inspections, repairs, and replacements.  Consequently, the Court found that it would be "fundamentally unfair" to require Defendants to proceed to trial on claims for windows for which they were denied the opportunity to conduct discovery. *Id.* at 7.

As trial in *Jeld-Wen I* approached, Jeld-Wen, Glasslam, and Reichhold each sought partial summary judgment.  Among other rulings, the Court held as it had in *Glasslam II*, that collateral

estoppel precluded re-litigation of the issue as to whether Reichhold's resin was defective. *Jeld-Wen I*, D.E. 305, p. 13.  Collateral estoppel, however, did not bar litigation of causation.  *Id.*  Rather, the Court found,

> Causation remains an issue with respect to proving actual damages in a contract claim and the parties should not be precluded from litigating this issue in light of changed factual circumstances, *i.e.*, the specific windows and doors that are at issue in this case and the variables that might affect whether Reichhold's resin is the legal cause of the damages the parties are seeking in this action.

*Id.*  Indeed, the Court concluded, Defendants had to be provided with the opportunity to litigate causation as to the particular claims for each window at issue in *Jeld-Wen I*.  *Id.* at 14; *see also id.* at 24.

Thus, the trial focused, in large part, on the issue of causation of Jeld-Wen's damages. Defendants contended that although Reichhold's resin had been ruled defective, the non-conforming resin did not cause Jeld-Wen's windows to delaminate.  *Jeld-Wen I*, D.E. 445, pp. 8, 11-37.  Rather, Defendants asserted that various other factors, all within the control of Jeld-Wen, caused the failure of the windows for which Jeld-Wen sought damages.  More specifically, Defendants argued, among other contentions, for example, that Jeld-Wen's windows contained design defects that allowed water intrusion, which caused delamination.  *See id.*  In this regard, Defendants claimed that the aluminum cladding over wood frames holding the Safety Plus glass in Jeld-Wen's windows effectively maintained water in the window frames, causing wood rot of the frames, which, according to Defendants, directly resulted in delamination of the Safety Plus glass.  *Id.* at 20-22.

Jeld-Wen, on the other hand, argued that it was Reichhold's resin that was the cause of delamination and discoloration of the Jeld-Wen windows at issue in the case. *Jeld-Wen I*, D.E. 444,

pp. 6-10.  In support of this argument, Jeld-Wen contended that for every delaminating Jeld-Wen

window with wood rot, ten delaminating and discolored Jeld-Wen windows without wood rot

existed.  *Id.* at 9-10.  Indeed, Jeld-Wen asserted that 70% of the windows containing Reichhold's

resin were failing at the time of trial in *Jeld-Wen I*.  *Id.*

> In instructing the jury, Judge Dimitrouleas directed the jury, in relevant part, as follows:

>> Reichhold and Glasslam contend that Jeld-Wen or its customers
>> and/or Installers were a legal cause of damages with respect to some
>> or all of Jeld-Wen's claims.  In this regard, you must determine
>> whether Jeld-Wen's acts or omissions, or acts or omissions of its
>> Installers or customers, were a legal cause of any alleged failure of
>> Jeld-Wen's windows.

>> If you find that the actions of Jeld-Wen or its customers and/or
>> Installers were a legal cause of damages for a particular customer
>> claim, then you must find in favor of Reichhold and Glasslam on that
>> claim.

*Jeld-Wen I*, D.E. 361, p. 12.  On June 26, 2007, the jury concluded that defective resin that Glasslam

supplied Jeld-Wen served as a legal cause of damages sustained by Jeld-Wen for breach of contract,

breach of express warranty, and breach of implied warranty of merchantability.  *Jeld-Wen I*, D.E.

362.  On the other hand, in considering the amount of "legally caused damages" with respect to each

of the 77 individual houses containing Jeld-Wen windows at issue, the jury declined to award any

damages at all for 46 of the homes.  *Id.* at 2-6.  As for the remaining 31 houses, the jury awarded a

total of more than $1 million in damages.  *Id.*

A few weeks after the Court entered final judgment in *Jeld-Wen I*, on August 16, 2007, Jeld-

Wen filed a motion to vacate the Court's Order of July 11, 2006, which had established the protocol

for the parties to repair and inspect the windows and doors at issue, including requiring Defendants

not to contact Jeld-Wen customers until after repairs occurred.  *Jeld-Wen I*, D.E. 395.  In support of

its motion, Jeld-Wen noted that it sought to allow Defendants an opportunity to inspect the

remaining windows at issue before a re-trial or a second trial, without Defendants' having to wait

for Jeld-Wen to conduct inspections, repairs, and replacements first. *Id.* at 1.  Jeld-Wen explained,

> By allowing [access to all Jeld-Wen windows not previously
> inspected, repaired, or replaced by Jeld-Wen], Jeld-Wen intends to
> resolve the concerns that led to the Court's ruling limiting damages
> claims to those windows and doors that were repaired and/or
> inspected during the discovery period.[] While good cause existed to
> establish the protocol in the July 11, 2006, Order, based on the
> Court's subsequent ruling that this case would be tried on a "house-
> by-house" basis, the cost to Jeld-Wen in piecemeal litigation is too
> substantial to continue to maintain the protections contained in the
> Order. . . .
>
> Allowing the Defendants to have access to the products and
> customers at issue will alleviate the Court's expressed justification
> for its April 24, 2007, Order limiting damages to only those products
> repaired during discovery.  The Defendants will have an opportunity
> to contact customers, schedule visits, interview customers, document
> evidence, and present their causation defense on a door by door
> window by window basis. . . .

*Id.* at 2, 5.  Noting that the July 11, 2006, Order applied only to *Jeld-Wen I*, which was closed at the

time that Jeld-Wen filed its motion to vacate, the Court denied Jeld-Wen's motion as moot.  *Jeld-*

*Wen I*, D.E. 396.

    4.  *Jeld-Wen II*

    As *Jeld-Wen I* did not address Jeld-Wen's claims for damages regarding windows for which

inspections, repairs, and replacements had not been completed by the close of discovery in *Jeld-Wen*

*I*, on September 5, 2007, Jeld-Wen filed the instant case to seek damages for windows in which it

utilized Glasslam's Safety Plus method and Reichhold's resin, which were not considered during the

course of *Jeld-Wen I*.  In this case, Jeld-Wen again alleges, among other claims, breach of contract

(Count I), breach of implied warrant of merchantability (Count II), and breach of implied warranty of fitness for a particular purpose (Count III).  D.E. 112-1.

In the current case, Jeld-Wen moves for a protective order "to establish a protocol for the preservation of evidence to be used at trial . . . ."      D.E. 81.  More specifically, Jeld-Wen asks the Court to enter an order that, among other functions, would require all parties, including Defendants, to provide notice of any removal or repairs of Glasslam Safety Plus units, regardless of whether the windows are incorporated into products manufactured by Jeld-Wen, and to preserve all removed windows.  *Id.* at 2.  Thus, Jeld-Wen seeks an order that would demand that Defendants provide notice of repairs and replacements of windows for which Jeld-Wen does not and cannot seek damages in this action, and that Defendants maintain all of such removed windows.

In support of its Motion, Jeld-Wen notes that Defendants "have previously asserted defenses alleging the defective Glasslam Safety Plus glass is being replaced due to the design and/or manufacture of Jeld-Wen's windows and doors, as well as defenses related to the necessity and cost of replacement of those laminated glass units."  *Id.* at 3.  Thus, Jeld-Wen reasons, inspection of non-Jeld-Wen Safety-Plus windows is relevant and could assist Jeld-Wen in defending against Defendants' claims that something Jeld-Wen did, caused the delamination of Jeld-Wen's windows.  D.E. 115-1, p. 7.  Plaintiff claims that if other non-Jeld-Wen windows are delaminating or yellowing, this evidence would tend to refute Defendant's claims that Jeld-Wen's design or installation of the windows at issue was the proximate cause of its damages.

Defendants vehemently disagree, arguing that it makes no sense to look at windows that are not a subject of the instant suit because doing so can reveal nothing about what caused the particular windows at issue in this case to fail.  D.E. 87-1; Feb. 4, 2008, hearing.  Rather, Defendants urge, the

cause of a specific Jeld-Wen window's delamination can be ascertained only by examining the Jeld-Wen window at issue itself. *Id.* Indeed, Defendants claim that this Court has already "made it clear that the only evidence that is relevant and admissible is that evidence which involves properties that are the subject of the pending action." D.E. 87-1 at 4.

Thus, instead of requesting that the Court adopt Jeld-Wen's proposed protective order, Defendants ask the Court to enter a protective order that contains many of the elements of the July 11, 2006, Order entered by the Court in *Jeld-Wen I*. D.E. 87-1; D.E. 87-4. Among other such provisions, Defendants' proposed protocol seeks to preclude Defendants' ability to contact Jeld-Wen's customers until after Jeld-Wen has scheduled a repair of the windows of the customer in question. D.E. 87-4, ¶4.

Jeld-Wen objects, noting that, unlike in *Jeld-Wen I*, Jeld-Wen has not sought, nor does any such limitation exist *in this case* on Defendants' contacts with homeowners possessing defective Jeld-Wen windows. Additionally, Jeld-Wen asserts that Defendants are aware of the names and addresses of such homeowners known to Jeld-Wen to have failing Security Plus glass. D.E. 115-1, p. 5. Thus, Jeld-Wen reasons, "Defendants' proposed Order is actually a transparent scheme to limit their own discovery opportunities, so as to set up a subsequent claim of prejudice in an attempt to limit the damages Plaintiff would otherwise present at trial." *Id.* at 1.

### III. ANALYSIS

In accordance with the parties' dueling Motions seeking a Court-imposed protocol, the Court will establish such a system. First, however, the Court must resolve the parties' disputes regarding the universe of glass to which the protocol will pertain and any restrictions on Defendants' ability to contact Jeld-Wen customers.

A.   **Jeld-Wen's Request to Require Defendants to Preserve all Safety Plus Glass Removed Subsequent to the Issuance of the Court's Order, Regardless of Whether the Glass Was Ever Part of a Jeld-Wen Window**

Rule 26(b), Fed. R. Civ. P., sets forth the permissible parameters of discovery.  Under that rule,

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or *defense* of any party . . . [that] appears reasonably calculated to lead to the discovery of admissible evidence . . . , [as long as the Court does not find that] (i) the discovery sought is unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. . . ."

R. 26(b), Fed. R. Civ. P. (emphasis added).  The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."  Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added).  Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted).

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure.  As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies.  The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).  Of course, the scope of permissible discovery is not unbounded.  Requested discovery must be relevant, and it must not impose undue burden, under the tests described in Rule 26(b)(2)(c).

Within this framework, the Court considers Jeld-Wen's request for an order requiring Defendants to preserve non-Jeld-Wen windows containing Safety Plus glass.  Jeld-Wen argues that it needs to inspect, and, possibly, to test the non-Jeld-Wen windows in order to defend itself from Defendants' claims that something Jeld-Wen did caused the delamination of Jeld-Wen windows containing the Safety Plus glass made with defective Reichhold resin.  Defendants, on the other hand, assert that non-Jeld-Wen windows are entirely irrelevant to the issue before the Court, as causation of delamination can be determined only by examining each individual window for which damages are sought to figure out what caused its particular failure.  Consequently, windows for which Jeld-Wen does not (and cannot) seek damages cannot bear on the issue of why the specific windows at issue in this case failed.

The Court finds that non-Jeld-Wen Safety Plus windows are relevant to the claims and defenses at issue in this case.  In *Jeld-Wen I* Defendants argued that Jeld-Wen's design of its windows, including the use of wood frames, aluminum cladding covering those wood frames without adequate means to allow water to drain, and other alleged defects – not Reichhold's resin – caused the delamination of the windows litigated in *Jeld-Wen I*.  They then indicated at the February 4th

---

[1]Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

hearing their intention to assert this same defense in the instant case.[2]

While the Court agrees that logic may make it desirable to observe the Jeld-Wen windows for which damages are sought in order to ascertain the cause of failure for a given window, it does not necessarily follow that nothing else can be helpful or relevant to making the causation determination.  For example, to the extent that non-Jeld-Wen windows do not contain the same alleged design defects as Jeld-Wen windows, any delamination of such non-Jeld-Wen windows may help Jeld-Wen to refute Defendants' assertions that Jeld-Wen's windows failed because of Jeld-Wen's alleged design defects.  Indeed, considering the testimony of Glasslam's expert, Dr. Willard, in *Glasslam I* that all Safety Plus glass will fail, likely within five years of installation, and Glasslam owner Stephen Howes's statement in the earlier litigation that all Safety Plus glass will have to be replaced, Jeld-Wen's request to examine non-Jeld-Wen Safety Plus glass to assist in determining the cause or causes of delamination in Jeld-Wen glass is entirely reasonable and seeks relevant information of the type anticipated to be made available by the broad discovery provisions of Rule 26(b).

Nor, as Defendants urge, does this Court's Order in *Glasslam II* precluding Reichhold from presenting evidence relating to Jeld-Wen windows and doors because Glasslam did not assert any claims in that case for Jeld-Wen windows dictate, or even suggest, a contrary conclusion.  In objecting to Glasslam's motion *in limine* seeking such an order, Reichhold explained that it desired

---

[2]Glasslam also pled this position as an affirmative defense in its Partial Answer to Jeld-Wen's Corrected First Amended Complaint.  *See* D.E. 82 at Affirmative Defense T.  While the Court recognizes that Jeld-Wen has since filed a Second Amended Complaint to which Defendants have not yet filed their response, the Second Amended Complaint merely adds additional counts to those already pled in the Corrected First Amended Complaint.  Hence, Glasslam's Affirmative Defense T appears unlikely to change.

to use evidence concerning Jeld-Wen windows to show that Reichhold resin was not defective. More specifically, according to Reichhold's Response in Opposition to Plaintiff's Omnibus Motion *In Limine*, *Glasslam II*, D.E. 102, p. 3, Glasslam asserted in *Glasslam I* that windows made with Silmar resin, which contained the ultraviolet light blocker Tinuvin 328, did not fail, when, in fact, delamination of Jeld-Wen windows containing such Silmar resin did allegedly occur.  Because Reichhold believed that the *Glasslam I* jury determined Reichhold's resin to be defective since it lacked the requisite amount of Tinuvin 328, unlike Silmar resin, Reichhold sought to present evidence that Silmar resin failed, just like Reichhold resin.  Thus, the lack of Tinuvin 328 in the requisite amount in Reichhold resin could not have rendered Reichhold resin defective.  In other words, Reichhold sought to use the evidence in question to re-litigate the finding from *Glasslam I* that Reichhold resin was defective.  As the Court held in its *Glasslam II* Summary Judgment Order, however, *res judicata* barred Reichhold from re-litigating that issue.  Consequently, the evidence relating to Jeld-Wen windows had no relevance to the claims remaining before the Court in *Glasslam II*.

In contrast, in the pending case, Jeld-Wen seeks the non-Jeld-Wen windows in relation to causation – a matter, which, as noted previously, remains a central issue.  As a result, the *Glasslam II* ruling with respect to Jeld-Wen windows does not preclude discovery relating to non-Jeld-Wen windows in the instant case.

As for Reichhold's suggestion that the Court's Order in *Jeld-Wen I* limiting Jeld-Wen to presenting claims at trial for only those properties where repairs and replacements had already been completed, somehow precludes Jeld-Wen from conducting discovery relating to non-Jeld-Wen windows in this case, D.E. 87-1 at 4, the Court cannot agree.  That ruling, as discussed above, rested

-17-

on the Court's conclusion that Defendants should not be made to defend against claims for which Jeld-Wen had prevented them from conducting discovery. Defendants face no such obstacles in the current case. Indeed, before Jeld-Wen even filed this case, this Court made it abundantly clear that the *Jeld-Wen I* July 11, 2006, Order that prevented Defendants from engaging in discovery on properties where Jeld-Wen had not yet finished repairs applied only to *Jeld-Wen I*.[3] *Jeld-Wen I*, D.E. 396. Consequently, nothing about the *Jeld-Wen I* Order limiting Jeld-Wen to presenting claims relating to properties where repairs had been completed indicates that Jeld-Wen should not be allowed to engage in discovery relating to non-Jeld-Wen windows.

Because the undersigned finds the evidence sought by Jeld-Wen to be "relevant" within the meaning of that term under Rule 26(b), the Court must next consider Defendants' objection that preserving such evidence would be unduly burdensome. At the February 4th hearing, Defendants argued that preserving all non-Jeld-Wen Safety Plus windows would unfairly encumber Defendants for several reasons. First, Defendants asserted that they had a lot of glass that needed to be replaced in China, which, of course, is a country that operates under a different system of government and laws from the United States, and Defendants must rely upon Chinese laborers, over whom Defendants exercise no control, to remove and preserve the glass at issue. Additionally, Defendants argued, the Chinese glass was placed in high-rise commercial buildings, as opposed to houses, like the Jeld-Wen windows. Thus, the burden was even greater, while the relevance of such windows, which differ in size and thickness from residential windows, was substantially less. Defendants

---

[3]Thus, while the undersigned does not opine on the parameters of claims that may be allowed at trial, Reichhold's suggestion that "Jeld-Wen will undoubtedly be limited to asserting claims for homes that have been repaired as of the close of discovery . . ." does not necessarily follow from the fact that the Court made such a limitation in *Jeld-Wen I*.

made similar arguments with respect to glass in the Bahamas.  Even with respect to glass removed from buildings in the United States, Defendants contended that pieces taken from commercial buildings had no relevance here because windows in residential buildings are involved in the case at hand.  Because of the size and thickness of glass from commercial buildings, however, Defendants argued that it would be extremely burdensome for Defendants to preserve such glass.

Nevertheless, Defendants did concede that preserving non-Jeld-Wen windows in wooden frames located in buildings in the United States would not unduly burden them.  Thus, in view of the relevance finding, the Court hereby **ORDERS** Defendants to comply with the protocol described in Section II.C., *infra*, with regard to such windows.

As for the other windows, the Court finds Defendants' concerns significant, though not insurmountable.  In order to address such considerations, the Court now **ORDERS** Defendants to subject to the protocol articulated in Section II.C., *infra*, windows removed from residential buildings in the United States, with street addresses ending in even numbers, up to a total of fifteen such houses.  These fifteen houses will be the first fifteen such houses for which replacements are scheduled.  The Court finds that this procedure will allow Jeld-Wen to engage in discovery with respect to a representative sample of the universe of similar, non-Jeld-Wen windows that have failed, while limiting inconvenience and burden to Defendants.  Jeld-Wen will pay for half of the expenses associated with preserving such windows, and Defendants will pay for the other half.

**B.   Defendants' Request that the Protocol Include a Limitation On Defendants' Ability to Contact Jeld-Wen Customers**

Among other provisions, Defendants' proposed protocol would impose limitations on Defendants' ability to contact Jeld-Wen's customers.  D.E. 87-4, ¶4. More specifically, Defendants'

proposed protocol effectively would preclude Defendants from contacting Jeld-Wen's customers except during and after repairs.  *Id.*

In their brief, Defendants do not explain why Defendants' contacts with Jeld-Wen's customers should be limited, other than to note that the July 11, 2006, Order in *Jeld-Wen I* restricted such communications.  *Id.* at 5, 8.  As this Court clearly indicated in *Jeld-Wen I*, however – even before the pending case was filed, the July 11, 2006, Order does not govern the proceedings in the instant case.  Nor, as Defendants appear to imply, have any other limitations in this case been placed to date on discovery regarding Jeld-Wen's customers for whom Jeld-Wen has not yet scheduled or conducted repairs.

During the February 4th hearing, Defendants argued in favor of Reichhold's proposed restriction because they claimed that they could not conduct all necessary discovery with respect to Jeld-Wen windows unless Jeld-Wen removed the windows in question.  Consequently, Defendants argued, no need existed for Defendants to contact Jeld-Wen customers prior to Jeld-Wen's scheduling of repairs.

The Court makes no judgment about the potential effectiveness of Defendants' discovery with respect to Jeld-Wen customers for whom Jeld-Wen has not yet scheduled inspections or repairs.[4]  To do so would put the proverbial cart before the horse.  Defendants' fear that discovery

_____

[4]The court notes, however, that this argument appears to be at least somewhat in conflict with Reichhold's alternative request in *Jeld-Wen I* for relief from the July 11, 2006, Order in the form of modifying the protocol to permit Reichhold to conduct formal and informal discovery on any of Jeld-Wen's customers, regardless of whether the intended repairs had been made.  *Jeld-Wen I*, D.E. 245, p. 3.  The alternative relief requested suggests that some discovery regarding Jeld-Wen customers whose windows have not yet been scheduled for inspections or repairs could benefit Defendants.

may not be as fruitful for them as they believe it would be if Jeld-Wen first contacted the customers and removed the windows does not provide a justification for the Court to preclude such discovery. This Court limited Defendants' contacts with Jeld-Wen's customers in *Jeld-Wen I* because Jeld-Wen requested the restrictions. Here, Jeld-Wen not only does not seek such limitations, but, in fact, urges the Court not to impose them – a position it has espoused since even before this case was filed. In the absence of any reason to limit Defendants' contacts with Jeld-Wen's customers, the Court declines to confine Defendants' ability to conduct discovery regarding Jeld-Wen's customers. Thus, should Defendants choose not to take advantage of the ability to conduct discovery with respect to Jeld-Wen's customers whom Jeld-Wen has not yet contacted to schedule inspections or repairs, they do so at their own risk.

The protocol set forth below does not address Defendants' abilities to contact Jeld-Wen customers. That is because it does not and is not intended in any way other than as expressly stated within the protocol (*e.g.,* limiting <u>all</u> parties to having two representatives in attendance at repairs) to restrict Defendants' abilities to contact Jeld-Wen customers, whether or not Jeld-Wen has scheduled repairs for them.

**C.**     <u>**The Protocol**</u>

1.     For all repairs of Jeld-Wen customers' windows and doors that have previously taken place, or have taken place through the date of this Order, Jeld-Wen is required to retain the windows and doors that were removed from its customers' homes and/or buildings. Additionally, Jeld-Wen is required to make specific note of the location in the building or home from which the glass was removed.

2.     For all repairs of non-Jeld-Wen customers' windows and doors containing Safety Plus glass that is housed in wooden frames, as well as for all repairs of non-Jeld-Wen customers' windows and doors containing Safety Plus Glass that is not housed in wooden frames and is located in residential buildings in the United States, with street addresses ending in even numbers, up to a total of the first fifteen such houses for which repairs or replacements are scheduled following entry of this Order, Defendants are required to retain the windows and doors that were removed from such homes and/or buildings.  Additionally, Defendants are required to make specific note of the location in the building or home from which the glass was removed.  This requirement pertains to any and all repairs as described above, which are performed, financed, and/or authorized by a Defendant or Defendants or their insurer(s).

3.     Each party will provide the other parties to this litigation with reasonable access to the removed windows and doors after they are stored.  The parties shall provide five business days' notice (from receipt of the notice) of a desired inspection, and unless there is a good reason not to permit the access, the storing party will provide it.

4.     The parties may perform testing, including destructive testing, on the laminated windows and doors, but only after ten business days' notice (from receipt of the notice) of such testing has been provided to all parties.  A protocol for the proposed destructive testing will be supplied with the notice.  Any objections to the proposed protocol of the testing must be served within five days of receipt of the notice.  All parties are allowed to observe and record such testing.  The testing party agrees to pay for transport to and from the testing location and all other expenses relating to the testing.

5.      The following protocol shall be followed by all parties in relation to the removal or repair

of any windows or doors manufactured with Glasslam Safety Plus I impact resistant glass

and otherwise subject to the provisions of this Protocol:

If a party intends to make any such repair or replacement, it shall provide each of the other

parties with three (3) business days' notice[5] of the place, date, and time of the repair or

replacement.  If a party schedules a repair to take place outside the Southern District of

Florida, it shall provide all the other parties with five business days' notice of the place, date,

and time of repair.  The other parties will be permitted to have their counsel and/or

experts/consultants present during the repair, but each party is limited to a maximum of two

representatives per party, unless otherwise agreed to in advance of the repair.  Once the repair

is scheduled as provided above, the scheduling party may proceed with the repair, regardless

of whether representatives from the other parties attend, provided that no repairs shall begin

prior to the time noticed by the scheduling party.  Any party may take photographs of all

windows and doors manufactured with the Glasslam Safety Plus I process on the premises,

as well as any building conditions associated with the windows and doors.

6.      To the extent that Jeld-Wen has not yet provided Reichhold and Glasslam with a complete

list of known homes and/or buildings that Jeld-Wen believes contain Safety Plus glass, Jeld-

Wen shall provide such a list to Reichhold and Glasslam within three days of entry of this

Order.   As Jeld-Wen learns of new homes containing Safety Plus glass that have not

---

[5]The undersigned notes that Defendants seek five and ten days' notice.  Because the Court finds it unduly burdensome for customers to have to wait ten days for repairs to their glass for the convenience of the parties in this litigation, and further, because the discovery cut-off is quickly approaching, the Court instead imposes the three and five-day notice periods.

previously been identified to Reichhold and Glasslam, Jeld-Wen shall provide such information to Reichhold and Glasslam within three days of receipt.

### III.  CONCLUSION

For the foregoing reasons, Jeld-Wen's Motion for Protective Order [D.E. 81] and Defendants' Motion to Establish a Protocol for Field Inspections and Preservation of Evidence [D.E. 93] are **GRANTED IN PART and DENIED IN PART**, in accordance with the terms of this Order.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:     Hon. William P. Dimitrouleas
        Counsel of Record

-24-