UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22326-CIV-DIMITROULEAS/ROSENBAUM

JELD-WEN, INC., an Oregon corporation,
individually and as assignee of the claims of
Cardinal IG Company, a Minnesota
corporation,

        Plaintiff,

v.

NEBULA GLASSLAM INTERNATIONAL, INC.,
d/b/a "GLASSLAM" and "N.G.I., INC.," a
Florida corporation, and REICHHOLD, INC.,
a Delaware corporation, and STEPHEN HOWES,

        Defendants.
_____/

## ORDER

### I. INTRODUCTION

      This matter comes before the Court upon Defendant Reichhold, Inc.'s Motion to Permit Privileged Work Product Protected Destructive Testing ("Reichhold's Motion"). [D.E. 161]. The Court has carefully reviewed Reichhold's Motion, all responsive and supporting filings thereto, the record in this case, and has heard argument of counsel at a hearing held on March 4, 2008. Additionally, the Court is otherwise fully advised in the premises and, for the reasons articulated below, now denies Reichhold's Motion.

## II.  BACKGROUND

The undersigned has previously set forth significant portions of the factual and procedural background of this case recited below.  *See, e.g.,* D.E. 146.  Because this background is necessary to understanding the Court's ruling in this Order, however, the Court once again recounts the relevant facts here for convenience.

**A.  Factual Background**

In this case, Plaintiff Jeld-Wen, Inc. ("Jeld-Wen"), an Oregon corporation, sues Defendants Reichhold, Inc. ("Reichhold"), a Delaware corporation, Nebula Glass International, Inc. ("Glasslam"), a Florida corporation, and Stephen Howes, the owner of Glasslam.  D.E. 109-2, ¶¶1-4. Although the Second Amended Complaint alleges twenty different counts, the nucleus of facts giving rise to all of these claims centers around the delamination and yellowing of hurricane impact resistant glass sold by Plaintiff Jeld-Wen.

More specifically, Jeld-Wen entered into a contract with Glasslam under which Glasslam sold Jeld-Wen certain resin and other glass products and licensed to Jeld-Wen Glasslam's patented process of producing impact resistant glass, called Safety Plus 1 glass ("Safety Plus").  Jeld-Wen then manufactured windows and doors containing hurricane impact resistant glass made through the Safety Plus creation process, which involved sandwiching together a piece of glass, resin, a thin piece of polyethylene terephthalate polyester ("PET") film, more resin, and another piece of glass. When prepared properly with effective ingredients, the impact resistant glass was supposed to function for at least ten years.  Instead, however, Jeld-Wen's customers began experiencing Safety Plus failures in the form of delamination and discoloration of the glass well before ten years after installation had elapsed.

As it turned out, the resin Glasslam sold to Jeld-Wen was defective in that it either did not contain any ultraviolet light blocker, or it contained too little or ineffective versions of ultraviolet light blocker. Additionally, the resin had not been cooked to the proper temperature. Consequently, sunlight on the Safety Plus glass could cause the resin to fail, resulting in delamination and discoloration. Glasslam purchased the resin it sold to Jeld-Wen from Defendant Reichhold, which manufactured the product.

**B.  The Procedural History**

   1.  *Glasslam I*

Upon receiving complaints about delamination and discoloration from customers other than Jeld-Wen, Glasslam investigated and discovered the problems with Reichhold's resin. *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1206 (11th Cir. 2006) ("*Glasslam I*"). Thus, in 2002, Glasslam filed suit against Reichhold for damages sustained as a result of Reichhold's defective resin. *Id*. The case fell to Judge Dimitrouleas, within this Court.

Before trial, this Court limited Glasslam to presenting at trial any future replacement claims unrelated to any of the specific customer complaints Glasslam had identified in its Rule 26, Fed. R. Civ. P., disclosures and interrogatory answers. Accordingly, at the trial, this Court instructed the jury as follows: "Glasslam may only seek to recover damages for those specific claims which have been presented to you during this trial. You should not consider at this time any damages for future claims which have not been specifically presented in this trial." *Id.* at 1209. The jury returned a verdict of $22,500,000.00 for Glasslam, which was comprised of $1,271,379.00 in out-of-pocket damages, $14,665.621.00 in unpaid customer claims, and $6,563,000.00 in lost profits. *Id.* at 1207. On appeal, the Eleventh Circuit affirmed the judgment.

### 2. *Glasslam II*

Following the conclusion of *Glasslam I*, Glasslam filed a second lawsuit against Reichhold in Case No. 05-60704-CIV-DIMITROULEAS (S.D. Fla.) ("*Glasslam II*"). In that action, Glasslam sought compensation for damages incurred as a result of Reichhold's defective resin, relating to glass not claimed in *Glasslam I*. Towards this end, Glasslam alleged six counts in its complaint, including the following three: breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty (Count III).

In its Order on the parties' cross-motions for summary judgment, the Court held that Reichhold was collaterally estopped from re-litigating the breach-of-duty elements of Counts I, II, and III. *Glasslam II*, D.E. 108, p. 14. Rather, the ultimate fact determined in *Glasslam I* – that Reichhold's resin was defective – could not be disturbed and continued to bind the parties. *Id.* "Whether the defective resin was the proximate cause of the particular claims for the particular windows" at issue in *Glasslam II*, however, was not litigated, and, thus, remained for trial. *Id.* at p. 16.

Instead of proceeding to trial, however, the parties settled the matter and entered into a stipulation of dismissal with prejudice. *Glasslam II*, D.E. 132. Accordingly, the Court dismissed the action with prejudice. *Glasslam II*, D.E. 134.

### 3. *Jeld-Wen I*

Before Glasslam and Reichhold settled *Glasslam II*, Jeld-Wen sued Glasslam, among others, in Case No. 05-60860-CIV-DIMITROULEAS (S.D. Fla.) ("*Jeld-Wen I*"). Glasslam then filed a third-party complaint against Reichhold in that action. *Jeld-Wen I*, D.E. 32.

In *Jeld-Wen I*, Jeld-Wen alleged seven counts against Glasslam, including the following

three: breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty of merchantability (Count III). *Jeld-Wen I*, D.E. 1. Glasslam, in turn, alleged eight claims against Reichhold, including, among others, breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty (Count III). *Jeld-Wen I*, D.E. 305, p. 6.

By Order dated July 11, 2006, this Court established a protocol to be followed when Jeld-Wen scheduled repairs of its customers' windows which were the subject of the *Jeld-Wen I* lawsuit. D.E. 76. Pursuant to this protocol, all parties were to receive notice of such repairs and to be permitted to attend such repairs under the conditions established by the Court in its Order. *Id.*

During the course of the litigation, Magistrate Judge Torres had an opportunity in an Order to consider the significance to *Jeld-Wen I* of Judge Dimitrouleas's summary judgment decision in *Glasslam II*. In that decision, Judge Dimitrouleas concluded that although collateral estoppel precluded reconsideration of the findings with respect to breach-of-warranty claims against Reichhold, causation remained very much an issue. *Jeld-Wen I*, D.E. 245, p. 4. Indeed, Magistrate Judge Torres noted that Jeld-Wen could not "merely use an average cost to repair and multiply that number by the number of defective units to come up with a damages calculation." *Id.* at 5-6. Rather, Jeld-Wen had to prove causation of damages with respect to each window for which it sought damages because causation potentially differed from window to window, and Jeld-Wen's damages arguably could have resulted from design problems, mold, water intrusion, wood rot, and other possible causes of delamination in the relevant windows, in addition to or instead of the defectiveness of Reichhold's defective resin. *See id.* at 4-5.

As causation continued to be a factor to be proven with respect to each window at issue in *Jeld-Wen I*, Magistrate Judge Torres held that the defendants could be required to defend against

claims for particular windows only where they had been provided with the opportunity to conduct discovery with respect to the windows in question. *Id.* at 10. Noting that, in direct response to Jeld-Wen's motion seeking to preclude Defendants from contact with Jeld-Wen's clients, the Court had limited Defendants to conducting formal and informal third-party discovery with regard to only those windows where Jeld-Wen had completed inspections, repairs, and replacements, the Court ruled that Jeld-Wen could seek damages in the *Jeld-Wen I* trial only with respect to that same universe of windows. *Id.* In so directing, the Court expressly pointed out that Jeld-Wen remained free to pursue its claims in a subsequent action for other windows not inspected, repaired, and replaced by the close of the discovery period. *Id.* at 8.

As trial in *Jeld-Wen I* approached, Jeld-Wen, Glasslam, and Reichhold each sought partial summary judgment. Among other rulings, the Court held as it had in *Glasslam II*, that collateral estoppel precluded re-litigation of the issue as to whether Reichhold's resin was defective. *Jeld-Wen I*, D.E. 305, p. 13. Collateral estoppel, however, did not bar litigation of causation. *Id.* Rather, the Court found,

> Causation remains an issue with respect to proving actual damages in a contract claim and the parties should not be precluded from litigating this issue in light of changed factual circumstances, *i.e.*, the specific windows and doors that are at issue in this case and the variables that might affect whether Reichhold's resin is the legal cause of the damages the parties are seeking in this action.

*Id.* Indeed, the Court concluded, Defendants had to be provided with the opportunity to litigate causation as to the particular claims for each window at issue in *Jeld-Wen I*. *Id.* at 14; *see also id.* at 24.

Thus, the trial focused, in large part, on the issue of causation of Jeld-Wen's damages.

Defendants contended that although Reichhold's resin had been ruled defective, the non-conforming resin did not cause Jeld-Wen's windows to delaminate. *Jeld-Wen I*, D.E. 445, pp. 8, 11-37.  Rather, Defendants asserted that various other factors, all within the control of Jeld-Wen, caused the failure of the windows for which Jeld-Wen sought damages.  More specifically, Defendants argued, among other contentions, for example, that Jeld-Wen's windows contained design defects that allowed water intrusion, which caused delamination. *See id.*  In this regard, Defendants claimed that the aluminum cladding over wood frames holding the Safety Plus glass in Jeld-Wen's windows effectively maintained water in the window frames, causing wood rot of the frames, which, according to Defendants, directly resulted in delamination of the Safety Plus glass. *Id.* at 20-22.

Jeld-Wen, on the other hand, argued that it was Reichhold's resin that was the cause of delamination and discoloration of the Jeld-Wen windows at issue in the case. *Jeld-Wen I*, D.E. 444, pp. 6-10.  In support of this argument, Jeld-Wen contended that for every delaminating Jeld-Wen window with wood rot, ten delaminating and discolored Jeld-Wen windows without wood rot existed. *Id.* at 9-10.  Indeed, Jeld-Wen asserted that 70% of the windows containing Reichhold's resin were failing at the time of trial in *Jeld-Wen I*. *Id.*

In instructing the jury, Judge Dimitrouleas directed the jury, in relevant part, as follows:

> Reichhold and Glasslam contend that Jeld-Wen or its customers and/or Installers were a legal cause of damages with respect to some or all of Jeld-Wen's claims.  In this regard, you must determine whether Jeld-Wen's acts or omissions, or acts or omissions of its Installers or customers, were a legal cause of any alleged failure of Jeld-Wen's windows.
>
> If you find that the actions of Jeld-Wen or its customers and/or Installers were a legal cause of damages for a particular customer claim, then you must find in favor of Reichhold and Glasslam on that claim.

*Jeld-Wen I*, D.E. 361, p. 12. On June 26, 2007, the jury concluded that defective resin that Glasslam supplied Jeld-Wen served as a legal cause of damages sustained by Jeld-Wen for breach of contract, breach of express warranty, and breach of implied warranty of merchantability. *Jeld-Wen I*, D.E. 362. On the other hand, in considering the amount of "legally caused damages" with respect to each of the 77 individual houses containing Jeld-Wen windows at issue, the jury declined to award any damages at all for 46 of the homes. *Id.* at 2-6. As for the remaining 31 houses, the jury awarded a total of more than $1 million in damages. *Id.*

### 4. *Jeld-Wen II*

As *Jeld-Wen I* did not address Jeld-Wen's claims for damages regarding windows for which inspections, repairs, and replacements had not been completed by the close of discovery in *Jeld-Wen I*, on September 5, 2007, Jeld-Wen filed the instant case to seek damages for windows in which it utilized Glasslam's Safety Plus method and Reichhold's resin, which were not considered during the course of *Jeld-Wen I*. In this case, Jeld-Wen again alleges, among other claims, breach of contract (Count I), breach of implied warrant of merchantability (Count II), and breach of implied warranty of fitness for a particular purpose (Count III). D.E. 112-1.

On February 14, 2008, this Court entered an Order that established a protocol for field inspections and preservation of evidence in the instant case. D.E. 146. Among other functions, the February 14th protocol specified instructions directing the manner in which destructive testing could occur:

> The parties may perform testing, including destructive testing, on the laminated windows and doors, but only after ten business days' notice (from receipt of the notice) of such testing has been provided to all parties. A protocol for the proposed destructive testing will be supplied with the notice. Any objections to the proposed protocol of

> the testing must be served within five days of receipt of the notice. All parties are allowed to observe and record such testing. The testing party agrees to pay for transport to and from the testing location and all other expenses relating to the testing.

D.E. 146, p. 22, ¶4. The Court entered this provision in direct response to all parties' requests that destructive testing be permitted on windows that are the subject of this action, and that such destructive testing occur only after notice to the other parties and an opportunity for all parties to observe and record the testing. *See* D.E. 81-3, ¶3 (Jeld-Wen's proposed order regarding destructive testing); D.E. 87-4, ¶3 (Reichhold and Glasslam's proposed order regarding destructive testing). Indeed, in their motion seeking the entry of a protocol, Reichhold and Glasslam urged with respect to their request for destructive testing only upon notice and with an opportunity for all parties to observe and record,

> The parties followed this protocol for destructive testing during the *Jeld-Wen I* litigation. Specifically, Reichhold invited Glasslam and Jeld-Wen to attend destructive testing it performed on windows and doors that were at issue in the *Jeld-Wen I* trial. It was imperative that such testing take place, and it is anticipated that similar testing will be necessary during this action in order to obtain evidence from the properties at issue in this case.

D.E. 87-1, p. 7, ¶3.

Five days after the Court entered the February 14th Order imposing the protocol requiring notice and opportunity to observe and record destructive testing, Defendant Reichhold filed the Motion now under consideration. D.E. 161. In this Motion, Reichhold seeks an order allowing each party to conduct "privileged work product destructive testing" on four windows from each home whose windows are at issue in this case.[1] In support of its Motion, Reichhold argues that under

---

[1] During oral argument, Reichhold offered alternatively to reduce the number of windows per house for which it would conduct destructive testing and to refrain from conducting

> the testing must be served within five days of receipt of the notice. All parties are allowed to observe and record such testing. The testing party agrees to pay for transport to and from the testing location and all other expenses relating to the testing.

D.E. 146, p. 22, ¶4. The Court entered this provision in direct response to all parties' requests that destructive testing be permitted on windows that are the subject of this action, and that such destructive testing occur only after notice to the other parties and an opportunity for all parties to observe and record the testing. *See* D.E. 81-3, ¶3 (Jeld-Wen's proposed order regarding destructive testing); D.E. 87-4, ¶3 (Reichhold and Glasslam's proposed order regarding destructive testing). Indeed, in their motion seeking the entry of a protocol, Reichhold and Glasslam urged with respect to their request for destructive testing only upon notice and with an opportunity for all parties to observe and record,

> The parties followed this protocol for destructive testing during the *Jeld-Wen I* litigation. Specifically, Reichhold invited Glasslam and Jeld-Wen to attend destructive testing it performed on windows and doors that were at issue in the *Jeld-Wen I* trial. It was imperative that such testing take place, and it is anticipated that similar testing will be necessary during this action in order to obtain evidence from the properties at issue in this case.

D.E. 87-1, p. 7, ¶3.

Five days after the Court entered the February 14th Order imposing the protocol requiring notice and opportunity to observe and record destructive testing, Defendant Reichhold filed the Motion now under consideration. D.E. 161. In this Motion, Reichhold seeks an order allowing each party to conduct "privileged work product destructive testing" on four windows from each home whose windows are at issue in this case.[1] In support of its Motion, Reichhold argues that under

---

[1] During oral argument, Reichhold offered alternatively to reduce the number of windows per house for which it would conduct destructive testing and to refrain from conducting

*Hickman v. Taylor*, 329 U.S. 495 (1947), and its progeny, Reichhold should be permitted to conduct limited destructive testing outside of the watchful eye of Jeld-Wen. According to Reichhold, such private destructive testing is "necessary for Reichhold to fully and fairly develop its case." D.E. 206, p. 3. Moreover, Reichhold contends, Jeld-Wen will suffer no prejudice as a result of the limited private destructive testing Reichhold seeks, since Reichhold would conduct such testing on only a small percentage of the thousands of windows at issue in this case. *Id.* at 2-3. Jeld-Wen opposes Reichhold's Motion, arguing that the requested order "would lead to the destruction of an enormous number of laminated glass units . . . that are evidence in this case . . . ." D.E. 200-2, p. 1.

At the March 4th hearing on Reichhold's Motion, in response to questioning from the Court, Reichhold confirmed that it intended to continue to seek to require Jeld-Wen to prove causation of its damages on a window-by-window basis. Reichhold's Motion is now ripe for disposition.

### *III. ANALYSIS*

Reichhold seeks the order to permit private destructive testing under Rules 26 and 34, Fed. R. Civ. P. D.E. 161, pp. 3-4. More specifically, Reichhold notes that Rule 34 allows any party to serve on any other party a request "to inspect, copy, test, or sample any designated tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served[.]" *See* D.E. 161 at p. 3. Thus, Rule 34 governs the pretrial production of evidence for testing and inspection by one's adversary. *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988) (citing *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 498 (8th Cir.), *cert. denied*, 474 U.S. 904 (1985)).

Here, however, no issue exists regarding the production of evidence for destructive testing.

---

destructive testing on windows from houses containing fewer than thirteen windows.

Indeed, all parties previously requested and received the entry of an Order authorizing destructive testing. D.E. 146. Rather, the sole matter for the Court to determine at this time involves Reichhold's request that it be permitted to conduct such destructive testing outside of Jeld-Wen's presence, shrouded by the veil of the work product privilege, and Jeld-Wen's corresponding objection to Reichhold's desire.

Normally, the Court would evaluate a party's request to obtain discovery of work-product-privileged documents and tangible things otherwise discoverable – arguably, another way of viewing Jeld-Wen's opposition to Reichhold's request – within the framework established by Rule 26(b)(3), Fed. R. Civ. P. With regard to such materials not covered by the expert witness disclosure provisions of Rule 26(b)(4), Fed. R. Civ. P., Rule 26(b)(3) permits discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for a party or that party's representative, including, among others, that party's attorney or consultant, "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) further warns, "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

In this case, however, Reichhold has not yet engaged in the destructive testing it seeks to perform outside of Jeld-Wen's presence. Nor can it without risking sanctions for spoliation of evidence in the absence of a court order, as the items sought to be destructively tested include actual evidence in this case, more specifically, the very windows for which Jeld-Wen seeks damages and

for which Reichhold seeks to require Jeld-Wen to prove damages on a window-by-window basis. Thus, the facts in this case do not fall neatly into the pattern anticipated by Rule 26(b)(3), unlike where a party seeks discovery of already-existing work product or a party reasonably expects to rely upon the work product protections formalized by Rule 26(b)(3) when engaging in consulting and testing activities that do not threaten to consume the entirety of an actual piece of evidence. Because of the posture of this case, should the Court deny Reichhold's Motion to conduct the destructive testing in a work-product-privileged environment, Reichhold will hold within its own hands the key to its fate with respect to discovery of any destructive testing. In other words, Reichhold would be able to choose not to perform any destructive testing, to determine in a knowing and intelligent way that the benefits of proceeding with destructive testing under the current protocol outweigh the disadvantages, or to modify the destructive tests it decides to perform so as to reduce any revelations of arguably otherwise work-product-privileged material. Generally, that is not the case when a court makes a determination under Rule 26(b)(3).

For all of these reasons, the Court considers Reichhold's Motion seeking authorization to conduct the previously approved destructive testing in a work-product-protected environment as more appropriately viewed as a motion for a protective order. Rule 26(c), Fed. R. Civ. P., governs the issuance of protective orders. That Rule provides, in relevant part, that upon a finding of good cause, a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." In this case, the potential injury of which Reichhold complains consists of alleged oppression and undue burden resulting from Reichhold's inability to conduct destructive testing under the protection of the work product privilege. Hence, the Court must consider whether Reichhold has adequately demonstrated "good

cause" to shield from Jeld-Wen under the work product privilege, Reichhold's future destructive testing of the entirety of certain windows in this case for which damages are sought.

In *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947), the Supreme Court explored the work product privilege, describing the purpose of it:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Reichhold points to *Hickman*'s teachings, arguing that it is entitled "to test its theories as to causation unencumbered by any other party. Allowing Jeld-Wen to be present at any such testing represents an intrusion into Reichhold's counsel's and consultants' mental impressions and thought processes that cannot be justified." D.E. 161 at 7-8. In support of these assertions, Reichhold directs the Court to *Shoemaker v. General Motors Corp.*, 154 F.R.D. 235 (W.D. Mo. 1994) and *Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641 (N.D. Ill. 1994). *Id.* at 7.

In *Shoemaker*, the plaintiffs sought to attend all litigation testing performed by the defendant

in relation to the cause of action at issue in that case. Nothing in *Shoemaker* indicates that the defendant planned to conduct testing on actual evidence in the case or that any actual evidence would be completely destroyed as a result of the testing in which the defendant intended to engage. The court denied the plaintiffs' request, citing the work product privilege and *Hickman*, and noting that the plaintiffs would have the opportunity to cross-examine any witness that the defendants chose to present to testify regarding the testing.

*Vardon* involved allegations of patent infringement. During the course of the litigation, Vardon Golf Co. ("Vardon"), the plaintiff, sought from Dunlop Slazenger Corporation ("Dunlop"), the third-party defendant in the case, the production of certain golf club heads that Dunlop's counsel had directed be cut open for inspection during the course of the litigation, as well as related materials. As the court explained, Dunlop conducted the cuts into the clubs for the purpose of preparing its defense to Vardon's allegations that Dunlop had infringed one of Vardon's patents. The court declined to grant Vardon's motion to compel production of these items, based on the work product privilege. The Court notes that as in *Shoemaker*, the testing at issue in *Vardon* did not involve unique, actual evidence.

Jeld-Wen argues that in cases where a party seeks to perform destructive testing on actual evidence in the case, courts require the testing party to allow the opposing party an opportunity to observe the testing. Among other examples of such cases, Jeld-Wen points to *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Md. 2006), *Spell v. Kendall-Futuro Co.*, 155 F.R.D. 587 (E.D. Tex. 1994), *Ostrander*, *supra*, and *Pizza Hut, Inc. v. Midwest Mech., Inc.*, 1988 WL 8980 (N.D. Ill. Feb. 1, 1988).

In *Mirchandani*, the plaintiffs sought damages arising out of a fall from an allegedly defective

ladder manufactured by the defendants. In support of their case, the plaintiffs moved to conduct destructive testing on one of two locking bolts contained on the ladder at issue. While the court permitted such destructive testing, it did so only upon imposing what it termed, "numerous safeguards," including, most significantly for purposes of the pending case, the right of the defendants to attend and photograph the testing and testing procedures, the right of the defendants to receive a detailed protocol explaining all of the procedures involved with the plaintiffs' testing, and the assurance that any modifications to the evidence would be "kept to a minimum."

Similarly, *Spell* involved a personal injury claim centering around the allegedly defective nature of a cane manufactured by the defendant. The *Spell* defendant sought to conduct destructive testing on the cane to determine its strength and metallurgical content. Although the court permitted such testing, as in *Mirchandani*, the court required the defendant to videotape the entire procedure and to allow the plaintiff and his counsel and experts to attend and observe all testing. Additionally, the court limited the destructive testing to the removal of a piece of the cane's metal tube, explicitly providing that the testing could not totally destroy or completely dismantle the cane.

*Ostrander* likewise concerned a products liability claim – this time involving children's nightwear. The defendants in *Ostrander* sought to conduct destructive testing on portions of the only existing exemplars of the clothing involved in the incident at issue in *Ostrander*. As in *Mirchandani* and *Spell*, the court permitted the destructive testing, but required the defendants to videotape such testing and to allow the plaintiffs to attend and observe the defendants' testing.

Finally, in *Pizza Hut*, Pizza Hut, Inc., the plaintiff, sued the defendants for damages arising out of a fire that Pizza Hut contended started as a result of a timer allegedly improperly installed or repaired by the defendants. More specifically, Pizza Hut claimed that the fire began because the

defendants' agent created a faulty connection when he installed the refrigeration timer. Thus, heat build-up in the faulty splice ultimately ignited the building materials in the attic of the restaurant, according to Pizza Hut's theory. The defendants sought to conduct destructive testing on a portion of the wire splice, and Pizza Hut objected. Once again, the court permitted the testing but required the defendants to allow Pizza Hut to videotape it. Jeld-Wen argues that this line of cases demonstrates that where destruction of actual evidence will occur as a result of the testing, the opposing party must be permitted to observe the testing.

Reichhold responds, pointing to orders in personal injury and wrongful death cases permitting privileged destructive testing of tissue samples. In this regard, Reichhold directs the Court to several federal and state orders that allowed both parties to conduct privileged destructive testing on up to half of the available tissue blocks and pathology specimen slides.

The Court has thoroughly reviewed all of the cases cited by both parties and has conducted its own research, as well. Based on these considerations, the Court concludes that although Reichhold may conduct destructive testing consistent with the protocol established by the February 14th Order in this case, Reichhold has not demonstrated "good cause" sufficient to justify destructive testing of the windows at issue outside the presence of Jeld-Wen.

At its heart, Reichhold's argument that privileged destructive testing of some of the windows at issue in this case will not prejudice Jeld-Wen because so many windows are in controversy here necessarily assumes that all of the windows are fungible. This position directly conflicts with Reichhold's theory of the case, which insists that each window is unique, so Jeld-Wen must be required to prove that Reichhold's resin caused Jeld-Wen's damages on a window-by-window basis. The Court cannot overstate the potential prejudice to Jeld-Wen of allowing Reichhold to destroy the

very windows for which Jeld-Wen must prove that Reichhold's resin caused Jeld-Wen's damages, outside of Jeld-Wen's presence. Indeed, under Reichhold's theory of the case, this case effectively amounts to the consolidation of hundreds, and possibly thousands, of separate cases, each addressing a single window. Reichhold's proposed privileged destructive testing would allow Reichhold to destroy all of the window at issue in several of those "sub-cases" without providing Jeld-Wen with even an opportunity to observe the destructive testing for causation of damages.

And, while the Court appreciates Reichhold's creative reference to the medical specimen cases, the undersigned does not find those cases to present an issue analogous to the one before this Court. In such personal injury and wrongful death cases, damages are sought with respect to the entire person, not each tissue in the person. Moreover, even within each tissue, the orders in these cases allow each party to conduct destructive testing on only up to half of the tissue blocks and specimen slides available. Consequently, the destructive testing in these types of cases does not allow for the privileged evisceration by a single party of all of the evidence for which damages are sought. Indeed, during the course of its review of the relevant case law, the Court found no cases – and Reichhold could similarly point to none – where a federal court allowed one party to conduct privileged destructive testing that consumed the entirety of the very piece of evidence for which the other party sought damages.

Nor, as Reichhold suggests, can Jeld-Wen's inspection and photography of the windows Reichhold seeks to destroy prior to such testing adequately address the prejudice to Jeld-Wen. Reichhold argues that Jeld-Wen's decision in the *Jeld-Wen I* trial to bring only approximately twenty windows into the courtroom and present evidence of damages with respect to the rest of the windows at issue in that case through the use of photographs demonstrates that Jeld-Wen does not need the

windows Reichhold seeks to destroy in a work-product-protected environment. When Jeld-Wen relied on photographs of certain windows in *Jeld-Wen I*, however, Reichhold still retained the ability, if it so desired, to refute Jeld-Wen's claims of causation with respect to the photographed window through the use of the actual window at issue. Under Reichhold's proposal, Jeld-Wen will not only not have the window in controversy to examine itself after Reichhold's expert reaches a conclusion about the cause of damages, but it will not have the benefit of having observed the testing as it was conducted to determine whether Jeld-Wen may have a different interpretation of the results or a challenge to the methodology.

Finally, the Court notes that as recently as January 21, 2008, in the case under consideration, Reichhold itself advocated for destructive testing in the presence of opposing parties when it asked the Court to enter a protocol governing such procedures and described as "imperative" the need for its proposed protocol, which allowed all parties to be present for destructive testing. D.E. 87-1, p. 7, ¶3. Reichhold has not explained what has changed since that time that renders the non-privileged testing Reichhold requested insufficient or, for that matter, no longer needed. Of course, the Court's ruling on Reichhold's Motion precluding privileged destructive testing of the windows at issue still allows for destructive testing pursuant to the February 14th protocol. Additionally, this Order does not otherwise limit Reichhold's ability to conduct work-product-privileged activities. Under these circumstances, the Court finds that Reichhold has not demonstrated the "good cause" necessary for the issuance of a protective order permitting Reichhold to conduct privileged destructive testing of the windows at issue in this case.

### IV. CONCLUSION

For the foregoing reasons, Defendant Reichhold's Motion to Permit Privileged Work Product

Protected Destructive Testing [D.E. 161] is **DENIED.**

**DONE AND ORDERED** this 6th day of March, 2008.

                                                 ROBIN S. ROSENBAUM
                                                 UNITED STATES MAGISTRATE JUDGE

cc:    Hon. William P. Dimitrouleas
        Counsel of Record