UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22326-CIV-DIMITROULEAS

JELD-WEN, INC., an Oregon corporation,
individually and as assignee of the claims
of Cardinal IG Company, a Minnesota
corporation,

                                                Magistrate Rosenbaum

       Plaintiff,

vs.

NEBULA GLASS INTERNATIONAL, INC.,
d/b/a "GLASSLAM" and "N.G.I. INC.," a
Florida corporation, REICHHOLD, INC.,
a Delaware corporation, and
STEPHEN HOWES, an individual

       Defendants.
_____/

## ORDER ON SUMMARY JUDGMENT MOTIONS

THIS CAUSE is before the Court upon Plaintiff Jeld-Wen's Motion for Partial Summary

Judgment [DE-316], Defendant/Third-Party Defendant Reichhold, Inc.'s Motion for Partial

Summary Judgment [DE-317], Defendant/Third-Party Plaintiff Glasslam's Motion for Partial

Summary Judgment [DE-319] against Jeld-Wen, and Defendant/Third-Party Plaintiff Glasslam's

Motion for Partial Summary Judgment as to Cross-Claim against Reichhold [DE-323].[1]  The

Court has carefully considered these Motions, Reichhold's Opposition to Jeld-Wen's Motion

[DE-354], Glasslam's Response to Jeld-Wen's Motion [DE-358], Jeld-Wen's Replies in Support

of its Motion [DE-386; DE-387], the Statements of Undisputed Material Facts in Support of

---

[1]As the Court has granted Defendants Glasslam and Stephen Howes' Motion to Sever Counts
XV-XX of the Complaint [DE-236] and ordered a separate trial on those claims [DE-443], Glasslam's
Motion for Partial Summary Judgment, as it pertains to those counts, and Howes' Motion for Partial
Summary Judgment [DE-321] will be addressed in a separate order.

Jeld-Wen's Motion and Responses to the Statements [DE-315; 359; 368]; Jeld-Wen's Response

to Reichhold's Motion [DE-361], Reichhold's Reply [DE-389], the Statements of Undisputed

Material Facts in Support of Reichhold's Motion and Response to the Statements [DE-318; 360];

Jeld-Wen's Response to Glasslam's Motion [DE-364], Glasslam's Reply in Support of its

Motion [DE-391], the Statements of Undisputed Material Facts in Support of Glasslam's Motion

and Response to the Statements [DE-320; 363]; Reichhold's Response to Glasslam's Motion as

to the Cross-Claim [DE-355], Glasslam's Reply [DE-390],the Statements of Undisputed Material

Facts in Support of Glasslam's Motion and Response to the Statements [DE-324; 369]; the

exhibits filed in support of the parties' motions, and is otherwise fully advised in the premises.

## I.  BACKGROUND

**A.  Factual History**

The instant action stems from a lengthy path of litigation revolving around glass products

and resin.  Plaintiff Jeld-Wen Inc. ("Jeld-Wen") is an Oregon corporation that is in the business

of manufacturing and selling glass products, including laminated glass.  From 1997 to 2003,

Jeld-Wen's Pozzi and Caradco divisions manufactured wood windows and doors incorporating

laminated, hurricane-resistant glass products, which were made using the "Safety-Plus" system

developed and licensed by Defendant Nebula Glass International, Inc. d/b/a Glasslam N.G.I., Inc.

("Glasslam").

Defendant Glasslam is a Florida corporation that supplies licensee and non-licensee

customers with raw materials and instructions to produce various laminated glass products.

Laminated glass is generally made by sandwiching resin and a thin film between two pieces of

glass.  Glasslam licenses its patented process, called "Safety Plus I", for making impact-resistant

2

laminated glass.  Defendant Steve Howes, a Florida resident, is the owner and president of Glasslam.

In 1996, Glasslam commenced a business relationship with Third-Party Defendant Reichhold, Inc. ("Reichhold").  Reichhold is a Delaware corporation, with manufacturing plants in Florida, that produces resin for various applications.  During the course of their relationship, Reichhold supplied Glasslam with drums of resin through a distributor, Polygard.  Glasslam used some of the resin but sold the remainder to its customers.  Reichhold supplied Glasslam with three different resins in the following order (though sales of all three resins overlapped): (1) Resin 32038; (2) Resin 32029; and (3) Resin 32038-45.  Glasslam discovered in October 2001 that Reichhold had been making its resin without Tinuvin 328, an ultra-violet light absorber Glasslam had required.  The parties' business relationship terminated in approximately December 2001, and no other resin was sold by Reichhold to Glasslam after that time.  Glasslam continued to sell Reichhold resin to its customers through February 2002, though it added Tinuvin to all Reichhold resin sold to third parties.

One of the customers to whom Glasslam sold Reichhold resin was Plaintiff Jeld-Wen. In June 1997, Glasslam and Jeld-Wen had entered into an agreement wherein Glasslam licensed its Safety-Plus system to Jeld-Wen and agreed to sell Safety-Plus products for the manufacturing of laminated impact-resistant glass at Jeld-Wen's Pozzi facility.  In August 1998, Cardinal IG Company ("Cardinal"), a Minnesota corporation, also entered into a contract with Glasslam for the licensing rights to make, use, and sell the resin and Safety-Plus products.  Jeld-Wen and Cardinal then purchased resins from Glasslam under the terms of their Agreements.  Jeld-Wen incorporated the resins in the manufacture of impact-resistant glass for use in hurricane-prone

3

regions.  Cardinal manufactured, and sold to Jeld-Wen, Safety Plus glass containing the resin.

When prepared properly, the impact resistant glass was meant to perform for at least ten years.

However, Jeld-Wen began receiving complaints from customers as to failures in the laminated

glass–the glass was delaminating and discoloring.  Glasslam has since admitted that the resin is

defective, due to the absence of Tinuvin and because the resin was "undercooked."

**B.  Procedural History**

   *1.  Glasslam I*

On April 5, 2002, Glasslam filed a complaint against Reichhold in the Circuit Court for

the Seventeenth Judicial Circuit in and for Broward County, Florida, which Reichhold removed

to federal court on May 22, 2002.  Nebula Glass Int'l, Inc. v. Reichhold, Inc., 02-60703-CIV-

DIMITROULEAS (S.D. Fla. filed May 22, 2002) (hereinafter "Glasslam I").  On May 23, 2002,

Glasslam filed an Amended Complaint in Glasslam I asserting claims for: (I) Breach of Contract;

(II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Breach of Implied

Warranty of Fitness for a Particular Purpose; and (V) Fraud.  Primarily, Glasslam's Amended

Complaint alleged that Glasslam required Reichhold to insert an ultraviolet light blocker called

"Tinuvin 328" in the resin supplied by Reichhold.  Glasslam contended that the absence, or

incorrect percentage, of Tinuvin causes various problems including the decreased efficiency of

hurricane resistant laminated glass.  Glasslam contended that as a proximate result of Reichhold

not supplying resin in accordance with Glasslam's specifications, Glasslam suffered known

damages to several projects, a loss of business, and potential exposure for faulty glass.

On December 3, 2002, this Court granted Reichhold's motion to dismiss Counts IV and

V of the Amended Complaint in Glasslam I.  The Court dismissed the fraud count based on

4

Florida's economic loss rule and the implied warranty for a particular purpose count based on insufficient allegations of Glasslam's reliance on Reichhold's skill and judgment. See Glasslam I, 02-60703-CIV (S.D. Fla. Dec. 3, 2002) [DE-14]. A jury trial on Plaintiff's remaining claims for breach of contract, breach of express warranty, and breach of implied warranty was held before this Court in May 2004. The jury found in favor of Plaintiff on all three counts and awarded damages for each of the three Reichhold resins at issue for out-of-pocket expenses, unpaid customers claims for future replacement of laminated glass, and lost profits. The Court entered final judgment for Plaintiff in the amount of $22,500,000.00. Reichhold appealed the final judgment on the issue of damages only. On June 30, 2006, the Eleventh Circuit Court of Appeals affirmed the judgment. See Nebula Glass Int'l Inc. v. Reichhold, Inc., 454 F.3d 1203 (11th Cir. 2006).

### 2. Glasslam II

Glasslam filed another Complaint against Reichhold on April 29, 2005, asserting claims for: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Fraud; (V) Negligent Misrepresentation; and (VI) Fraud in the Inducement, alleging facts identical to those in Glasslam I. See Nebula Glass Int'l, Inc. v. Reichhold, Inc., Case No. 05-60704-CIV-DIMITROULEAS (S.D. Fla. filed Apr. 29, 2005) (hereinafter "Glasslam II"). In that case, Glasslam sought damages in addition to those awarded in Glasslam I for claims that were not yet ripe at the time that Glasslam I was filed. In Glasslam II, Glasslam argued that Reichhold was collaterally estopped from relitigating Counts I, II, and III based on the final judgment in Glasslam I. Reichhold argued that it was not estopped from litigating those counts based on changed factual circumstances. The Court agreed, in part, and held that the parties could not

relitigate the breach elements of Glasslam's claims but could litigate causation and themes of bad installation and bad fabrication based on changed factual circumstances.  See Glasslam II, Case No. 05-60704-CIV (S.D. Fla. Oct. 30, 2006) [DE-108].   Prior to trial in Glasslam II, the parties reached a settlement agreement in that action.

### 3. Jeld-Wen I

On May 26, 2005, Plaintiff Jeld-Wen filed a Complaint against Defendants Glasslam and Cardinal IG Company ("Cardinal").  Plaintiff filed its Third Amended Complaint on December 1, 2006. [DE-117].  In its Third Amended Complaint [DE-117], Plaintiff asserted claims for: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty of Merchantability; (IV) Breach of Implied Warranty of Fitness for a Particular Purpose; (V) Unjust Enrichment; (VI) Fraud; and (VII) Claim of Indemnity against Glasslam.  See Jeld-Wen, Inc. v. Nebula Glass International, Inc., Case No. 05-60860-CIV-DIMITROULEAS (S.D. Fla. filed May 26, 2005) (hereinafter "Jeld-Wen I").  Jeld-Wen voluntarily dismissed Cardinal from the action on January 30, 2007. [DE-165].

On December 9, 2005, Glasslam filed a Third-Party Complaint in Jeld-Wen I against Third-Party Defendant Reichhold.  In the Third-Party Complaint (Amended by Interlineation), Glasslam alleged claims for the following: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Fraud; (V) Negligent Misrepresentation; (VI) Fraud in the Inducement; and (VII) Indemnity; and (VIII) Contribution[2].  In the Third-Party Complaint, Glasslam alleged facts almost identical to those alleged in Glasslam II.

---

[2]Glasslam's Third-Party Complaint contained two counts numbered "Count VI."  The Court construed the duplicate Count VI, Glasslam's claim for Indemnity, to be Count VII of the Third-Party Complaint and Count VII, a claim for Contribution, to be Count VIII.

In ruling on the parties' motions for partial summary judgment, this Court ruled that collateral estoppel precluded the re-litigation as to whether the resin was defective. Causation again remained an issue however, in terms of actual damages for the windows at issue. See Jeld-Wen I, Case No. 05-60860-CIV (S.D. Fla. May 15, 2007) [DE-305]. After a trial conducted in June 2007 before this Court, the jury found in favor of Jeld-Wen for breach of contract, breach of express warranty, and breach of implied warranty of merchantability. However, the jury found that Jeld-Wen was not entitled to indemnification from Glasslam for the claims made by Jeld-Wen customers. The jury also found in favor of Glasslam on its third-party complaint against Reichhold for breach of contract, breach of express warranty, and breach of implied warranty. 77 individual homes were at issue, though no damages for legal causation were awarded for 46 of the homes. As for the remaining 31 houses, the jury awarded $1,678,673.00. The Court then granted Glasslam and Reichhold's Joint Motion for a set-off in the amount of $517,302.00 based on the settlement agreement and covenant not to sue entered between Jeld-Wen and Cardinal. Jeld-Wen filed an appeal of the judgment with the Eleventh Circuit on August 9, 2007 and an appeal of the Order Denying Plaintiff's Motion for Rule 60(b) Relief on October 26, 2007 [DE-456]. This case remains pending on appeal before the Eleventh Circuit. See Jeld-Wen, Inc. v. Nebula Glass, Int'l, et al., Case No. 07-13834-CC (11th Cir., filed Aug. 9, 2007). However, on March 20, 2008, Plaintiff Jeld-Wen filed a Rule 60(b) Motion for Relief from Judgment in the Form of a New Trial, arguing that a new trial was warranted under Federal Rule of Civil Procedure 60(b)(2) and (3). On May 13, 2008, this Court ruled that Jeld-Wen's Rule 60(b)(3) Motion for a New Trial had merits, thus Jeld-Wen could petition the Eleventh Circuit to remand the case to this Court. Should the Eleventh Circuit remand the case to this Court, the homes at

issue in <u>Jeld-Wen I</u> will be retried.

### 4. Jeld-Wen II

On September 5, 2007, Jeld-Wen brought the instant action seeking damages for the claims that were not adjudicated in <u>Jeld-Wen I</u> and for claims assigned by Cardinal[3]. This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.

In its Second Amended Complaint filed on January 28, 2008 [DE-112], Jeld-Wen brings claims against Glasslam for (I) Breach of Contract; (II) Breach of Implied Warranty of Merchantability; (III) Breach of Implied Warranty of Fitness for a Particular Purpose; (IV) Unjust Enrichment; (VIII) Constructive Trust; (IX) Equitable Lien; (XIII) Implied Contractual Indemnity; and (XIV) Breach of Covenant of Good Faith and Fair Dealing. Jeld-Wen brings claims against Glasslam and Reichhold for (V) Innocent Misrepresentation; (VI) Negligent Misrepresentation and Non-Disclosure; (VII) Fraud; (X) Equitable Subrogation; (XI) Equitable Assignment; and (XII) Equitable Indemnity. Jeld-Wen also brings claims against Howes, the President and owner of Glasslam, for: (XV) Alter Ego/Piercing the Corporate Veil and (XVI) Unjust Enrichment, as well as (XX) Restitution of Royalties against Glasslam and Howes. Finally, Jeld-Wen brings claims for (XVII) Declaratory Judgment as to the Invalidity of U.S. Patent No. 5,778,629; (XVIII) Declaratory Judgment as to the Invalidity of U.S. Patent No. 5,937,611; and (XIX)  Declaratory Judgment as to the Invalidity of U.S. Patent No. 6,101,783.[4] Jeld-Wen seeks damages including: 1) replacement and/or repair costs of windows and doors; 2)

---

[3]As Jeld-Wen has noted in its pleadings, when it refers to the claims by Jeld-Wen, it incorporated Cardinal's claims as well, and the Court adopts this approach in the instant Order.

[4]<u>See</u> Fn. 1 above, indicating that Glasslam and Howes' Motion to Sever [DE-236] was granted. Calendar Call for a trial on Counts XV-XX is scheduled for August 22, 2008. [DE-443].

past and future costs of Jeld-Wen's Product Integrity Department and other related costs; 3) lost profits and damage to reputation; 4) attorneys' fees and costs; and 5) any other damages proven at trial.

On May 1, 2008, this Court granted Reichhold's Motion to Dismiss in part. [DE-371]. Counts V (Innocent Misrepresentation); X (Equitable Subrogation); XI (Equitable Assignment); and XII (Equitable Indemnity) of Jeld-Wen's Second Amended Complaint were dismissed against Reichhold for failure to state a claim. Only Jeld-Wen's claims for negligent misrepresentation and fraud remain as to Defendant Reichhold.

Defendant Glasslam filed a cross-claim against Defendant Reichhold on March 7, 2008 [DE-217], bringing claims for breach of contract, breach of express warranty, breach of implied warranty, indemnification and contribution.

## II. <u>DISCUSSION</u>

### A. Summary Judgment Standard

Courts may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party faces the stringent burden of establishing the absence of a genuine issue of material fact before summary judgment may be granted. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When deciding such a motion a court will not grant summary judgment unless it is clear that a trial is unnecessary. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). If uncertainty exists in regards to the necessity of a trial, the court will resolve any doubts against the moving party. <u>Adickes v. S.H. Kress & Co.</u>,

398 U.S. 144, 157 (1970).

The burden of production for a summary judgment motion rests first with the movant.  It is the movant that "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To satisfy this burden, the movant must demonstrate that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  Only after the movant has discharged its burden does the burden of production shift to the nonmoving party.  If the burden does shift, then the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To meet their burden the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

When considering cross-motions for summary judgment a court need not enter a judgment for either party.  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

Rather, where multiple parties move for summary judgment, a court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002) (quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).

**B. Plaintiff Jeld-Wen's Motion for Partial Summary Judgment**

Plaintiff Jeld-Wen moves for Partial Summary Judgment as to its breach of contract and breach of warranty causes of action against Defendant Glasslam.  Jeld-Wen asserts that it is entitled to summary judgment on every element of its breach of contract and breach of warranty claims.  This Court held in Jeld-Wen I that Jeld-Wen was entitled to summary judgment on its breach of contract and warranty claims and entitled to nominal damages. Case No. 05-60860 [DE-305] (S.D. Fla. May 15, 2007).  However, Jeld-Wen again argues that Glasslam has admitted that it breached the Agreement and that the breach caused damages to Jeld-Wen and Cardinal, thus it is entitled to summary judgment.  Jeld-Wen also argues that the factual circumstances have changed as Glasslam has admitted that it owes Jeld-Wen the reasonable cost of replacing the defective laminated glass. Thus, according to Jeld-Wen, the only remaining issue is the amount of damages Glasslam must pay.

Glasslam responds that, though Stephen Howes, President of Glasslam, has admitted that Glasslam is liable for replacing the defective glass, this does not mean the issue of causation is appropriate for summary judgment.  According to Glasslam, Jeld-Wen's assertions that "all that remains to be determined at trial is the amount of Jeld-Wen's damages caused by Glasslam's admitted breach" is an admission that it is not entitled to summary judgment on the issue of

11

causation–these are in reality, the same issues.

### 1. Jeld-Wen's Breach of Contract Claim

Under Florida law, to prove a claim for breach of contract, a plaintiff must show: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citing Knowles v. C.I.T. Corp., 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977)).  Here, Glasslam does not dispute that the parties had a valid agreement for the licensing and sale of Safety Plus products, including resin, which was guaranteed for ten years.  Additionally, Glasslam does not dispute that it has admitted that the resins supplied to Jeld-Wen were defective and that it believes that every piece of glass will fail.  Thus, Jeld-Wen has established the first two prongs of its breach of contract claim.

However, the third prong of a breach of contract claim requires a showing that the breach of contract was the legal cause of the claimed damages.  A party cannot recover actual damages for breach of contract "unless it can prove that the damages were *proximately caused by the breach*."  Crowley Am. Transport v. Richard Sewing Mach. Co., 172 F.3d 782, 784 (11th Cir. 1999) (emphasis added); see also Cibran Enter., Inc. v. BP Prods. N. Am., Inc., 365 F. Supp. 2d 1241, 1258 (S.D. Fla. 2005) ("Under Florida law, a contract plaintiff may recover . . . the damages that are the natural and proximate result of the default, subject to the rules of foreseeability and certainty."); Travelers Indem. Co. v. Parkman, 300 So. 2d 284, 285 (Fla. 4th DCA 1974) ("[I]n actions sounding in contract . . . damages recoverable are limited to those which are the natural and proximate result of the breach, or such as may reasonably be supposed to have been within the contemplation of the parties at the time they made the contract.").  In order to recover on its claims, Jeld-Wen must show that the damages were proximately caused by

the breach.  The Court, consistent with its prior rulings, finds, based on the undisputed facts in

this case, that Jeld-Wen has established that Glasslam breached its duties under the parties'

Agreements.  However, as has been consistently indicated in Glasslam I, Glasslam II, and Jeld-

Wen I, the issue of causation–the damages proximately caused by the breach and the amount of

those damages–remains.  Glasslam admitting that it should pay reasonable costs for replacing the

glass does not establish that the defective resin has caused actual damages.  Therefore, whether

Glasslam's breach is the legal cause of Jeld-Wen's damages is a fact issue to be decided by the

jury at trial.  See Gonzalez v. Garcia, 913 So. 2d 735, 736 (Fla. 3d DCA 2005).

        Under Florida law, however, even where actual damages and issues of proximate cause

have not been proven, once a plaintiff has established a breach of contract, he is entitled to an

award of nominal damages because the law presumes some damages when a legal right has been

violated.  Beverage Canners, Inc. v. Cott Corp., 372 So. 2d 954, 956 (Fla. 3d DCA 1979) (citing

Price v. S. Home Ins. Co. of Carolinas, 100 Fla. 338, 129 So. 748 (1930) and 9A Fla. Jur.,

Damages § 7-8) ("When the breach of an agreement or invasion of a right is established, since

the law infers some damage to the injured party . . . the award of nominal damages is proper.")).

"[N]ominal damages . . . are recoverable upon a finding of breach of contract even though no

proof of further damages is made out."   Zim v. Western Publ'g Co., 573 F.2d 1318, 1326 (5th

Cir.1978) (citing Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972)).  Here, Jeld-Wen has

not yet established that its actual damages were the proximate result of Glasslam's breach of

contract and this issue remains for trial.  Nevertheless, Jeld-Wen has established the invasion of

its legal right by Glasslam's admission that it breached the contract and that all the windows will

fail, and therefore is entitled to summary judgment on the issue of liability.

### 2. *Jeld-Wen's Breach of Warranty Claims*

Similarly, Jeld-Wen moves for summary judgment as to liability on Counts II, Breach of Implied Warranty of Merchantability, and III, Breach of Implied Warranty of Fitness for a Particular Purpose.  Because the facts of Glasslam's breach of the implied warranties made to Jeld-Wen regarding the performance of the resin have been established, the Court agrees that Jeld-Wen is entitled to judgment as to the issue of liability in Counts II and III, but again finds that whether these breaches were the legal cause of Jeld-Wen's damages remains to be proven at trial.

#### a) Implied Warranty of Merchantability

Under Florida law, to establish a claim for breach under a theory of implied warranty, a plaintiff must show (1) that the Plaintiff was a foreseeable user of the product, (2) that the product was being used in the intended manner at the time of the injury; (3) that the product was defective when transferred from the warrantor; and (4) that the defect caused the injury. Amoroso v. Samuel Friedland Family Enter., 604 So. 2d 827, 833 (Fla. 4th DCA 1992). Glasslam does not dispute the first three elements with respect to Jeld-Wen's claim for breach of implied warranty of merchantability and therefore should be found liable on these claims. However, causation is an element of a claim for breach of implied warranty, as such claims require a showing that the product defect caused the injury.  See Amoroso v. Samuel Friedland Family Enter., 604 So. 2d 827, 833 (Fla. 4th DCA 1992) (stating elements of breach of implied warranty claim).   Clearly, causation is an issue in each of the claims raised here and Glasslam and Reichhold should not be precluded from litigating that issue.

b) Implied Warranty for Fitness of a Particular Purpose

Under Florida law, a warranty of fitness for a particular purpose arises "where a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp., 719 F.2d 1092, 1100 (11th Cir. 1983) (citing Fla. Stat. Ann. § 672.315).[5] "A 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business." Id. (citing Official Comment 2 to U.C.C. § 2-315).

As to Plaintiff's claim for breach of implied warranty for fitness of a particular purpose, the parties do not dispute that the manufacture of impact-resistant glass was a particular purpose, rather than the product's ordinary use. In addition, the facts show that the use of the Reichhold resin for the specific purpose of manufacturing impact-resistant laminated glass was a particular use, as distinguished from the ordinary use of manufacturing laminated glass. Glasslam also does not dispute that Jeld-Wen's reliance was reasonable. However, whether the defective resin was the proximate cause of Jeld-Wen's injury is an issue for trial.

### 3. Glasslam's Affirmative Defenses

Plaintiff Jeld-Wen also moves for summary judgment as to Glasslam's affirmative defenses V: Jeld-Wen's Claims are Barred by Warranties and W: Jeld-Wen's Claims are Barred by the Doctrine of Voluntary Payment. Reichhold has also moved for partial summary judgment

---

[5]Florida Statute § 672.315 states that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

on this issue, addressed in Section D(2) *infra*, requesting that Jeld-Wen be barred from asserting claims for homes with expired warranties, claims by second homeowners, and from seeking damages beyond the warranty terms.  This section will address the issues raised in both Motions.

Jeld-Wen argues that Glasslam cannot use Jeld-Wen's warranties with its customers to assert a defense that Jeld-Wen should not have replaced windows and doors on homes with expired warranties.  Jeld-Wen asserts that these defenses distort the true issue–that Glasslam breached its contract with Jeld-Wen and thus Jeld-Wen did not get the benefit of its bargain: resin guaranteed to perform for at least ten years.  According to Jeld-Wen, the warranties it has with its customers are not at issue and the homeowners are not even parties to this action. Glasslam is thus, in essence, seeking to replace its ten-year resin guaranty with the terms of Jeld-Wen's warranty.  Jeld-Wen points to Rothstein v. DaimlerChrysler Corporation, 2005 U.S. Dist. LEXIS 30017 (M.D. Fla. Nov. 18, 2005), as an analogous situation.  In that case, the warrantor of a motor vehicle could not assert voluntary payment as an affirmative defense against a purchaser who only paid to repair an item because the warrantor refused.  Rothstein v. DaimlerChrysler Corporation, 2005 U.S. Dist. LEXIS 30017 at * 8-9 (M.D. Fla. Nov. 18, 2005).  The court indicated that if the defense were to apply, the consumer would be placed in the untenable position of either using an unsafe product or foregoing the use of the product during the litigation–which would "eviscerate the express warranty."  Id. at *9.  Similarly, here, Jeld-Wen is placed in the position of facing litigation from its customers if it does not conduct repairs.  Thus, Glasslam should not be able to assert the voluntary payment defense as this would eviscerate its ten-year guaranty.

Glasslam and Reichhold argue that by virtue of the expired warranties for certain homes,

Jeld-Wen had no legal obligation to perform repairs on those homes, thus any repairs it did make were voluntary payments that it cannot now recover from Glasslam.  See e.g., Personal Representative of Estate of Jacobson v. Attorneys' Title Ins. Fund, Inc., 685 So. 2d 19, 20 (Fla. 3d DCA 1996).  Reichhold[6] also argues that Jeld-Wen has tried to enforce its warranties against homeowners as a defense, such as for expired warranties or against second homeowners, while in other cases it has voluntarily replaced windows and doors though it had no obligation to do so.  In addition, Reichhold contends that the voluntary payment issue is a defense to payments Jeld-Wen made to homeowners over and above the terms of the Jeld-Wen warranties–such as labor and installation costs.

Jeld-Wen responds that this case involves a contract it had with Glasslam and thus the homeowner warranties should play no role.  Jeld-Wen further argues that homeowners may be able to overcome the warranties in suits against it and thus, Jeld-Wen will be placed in the inequitable position of having to pay remedies for homeowners, but not recover those costs from Glasslam and Reichhold, the sources of the defective resin.  Jeld-Wen also puts forth that the warranty terms by their own language indicate that Glasslam and Reichhold's arguments do not apply.  The Jeld-Wen product warranty provides that the product will be free of "defects in

---

[6]Jeld-Wen argues in Reply to Reichhold's Response that its Motion for Partial Summary Judgment is only directed at Glasslam and thus Reichhold has no standing nor stake in the outcome of the Motion.  Therefore, Jeld-Wen argues, the Court should not consider Reichhold's Response.  However, though the claims involved in Jeld-Wen's Motion for Partial Summary Judgment are not brought against Defendant Reichhold, as a Third-Party Defendant in a Complaint brought by Defendant/Third-Party Plaintiff Glasslam, Reichhold is entitled to assert against Plaintiff Jeld-Wen "any defense that the third-party plaintiff [Glasslam] has to the plaintiff's claim."  Fed. R. Civ. P. 14(a)(2)(C).  Furthermore, as Glasslam's third-party Complaint seeks indemnity against Reichhold for any damages awarded to Jeld-Wen, Reichhold obviously has a stake in the outcome of the Motion.  Finally, as noted above, Reichhold has raised the same arguments in its Motion for Partial Summary Judgment, as discussed in Section D2.  Therefore, the Court will consider both the arguments of Glasslam and Reichhold.

material or workmanship" for a period of time from "the date of manufacture."  See Pl.'s

Statement of Material Facts, DE-359, Ex. 2, Caradco Warranty, Ex. 3, Pozzi Warranty.  In this

case, because the defective resin was present when Jeld-Wen received the resin from Glasslam,

the defect was always present in the product during the warranty term.  Thus, the expiration of

the warranty does not affect Jeld-Wen's warranty obligations to the homeowner in regards to the

defective resin.  Jeld-Wen further argues that the warranty defense ignores the doctrine of

"failure of essential purpose," which would entitle a homeowner to a broader range of remedies

than what is set forth in the warranty. See e.g., Tampa Farm Serv., Inc. v. Cargill, Inc., 356 So.

2d 347 (Fla. 2d DCA 1978) (limited remedies may be overcome if they fail their essential

purpose); Pinellas Suncoast Transit Authority v. Mincom, Inc., 2007 WL 1222595, 3 (M.D. Fla.

Apr. 24, 2007) (same).

        In Jeld-Wen I, Glasslam made a motion in limine to exclude damage evidence outside the

scope of applicable warranties [Case No. 05-60860, DE-265], which this Court denied, without

prejudice to reassert at trial.  During Jeld-Wen I, Defendants were able to argue that Jeld-Wen

could not recover damages for homes which had expired warranties.  However, it is not known

whether the jury's decision was premised on the warranty theory, thus it is not clear if this issue

was determinative to the outcome.[7]  Furthermore, in light of the potential retrial, the Court is not

persuaded that the issue is final.  The Court also notes that perhaps it should not have allowed the

warranty arguments in Jeld-Wen I, as Glasslam should have been estopped from making

---

        [7]The Court's Instructions to the Jury included an instruction that "If you find that for any house
at issue, there was a warranty that was valid, enforceable and had expired, then Jeld-Wen is not permitted
to recover damages for work done on that house."  Jeld-Wen I, Case No. 05-60860 [DE-361, p. 19] (S.D.
Fla. June 26, 2007).  However, the Verdict Form did not include any findings as to the warranties. Id.
[DE-362].

converse arguments to its stance in <u>Glasslam I</u>.  In <u>Glasslam I</u>, Reichhold argued for a jury

instruction limiting the damages based on Glasslam's warranty.  An excerpt of the discussion is

as follows:

> [REICHHOLD]:  This would be where Glasslam–one of Glasslam's
> customers has made a claim against Glasslam.  The evidence is that
> Glasslam's warranty to that customer limits Glasslam's exposure, and so we
> are saying that we should have the benefit of that.  That's what the evidence
> shows.  Their warranty has limitations that blocks their customers from
> asserting these other types of damages, and we are simply saying there should
> be an instruction that those should not be passed through to Reichhold.
>
> . . .
>
> [GLASSLAM]: . . . But, as a matter of law anyhow, it wouldn't limit
> damages.  I mean, people get sued for damages in excess of warranties all the
> time.
>
> . . .
>
> [THE COURT]: All right.  I am not going to give defendant's proposed
> [instruction].

<u>Glasslam I</u>, Vol. 8, Transcript of Jury Trial, 5/19/2004, p. 165:24-167:12 [Exhibit N to Plaintiff's

Statement of Undisputed Material Facts, DE-315].

Thus, in <u>Glasslam I</u>, Glasslam was not limited in its recovery by the warranties it issued

to its customers.  Therefore, Glasslam is estopped from arguing that Jeld-Wen's damages should

be limited by its warranties.  Under the doctrine of judicial estoppel, "[w]here a party assumes a

certain position in a legal proceeding, and succeeds in maintaining that position, he may not

thereafter, simply because his interests have changed, assume a contrary position . . .."  <u>New

Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001) (quoting <u>Davis v. Wakelee</u>, 156 U.S. 680, 689

(1895)).  <u>See also</u>, 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 4477

("Courts do not relish the prospect that an adept litigant may succeed in proving a proposition in

one action, and then succeed in proving the opposite in a second.  At worst, successful assertion

of inconsistent positions may impose multiple liability on an adversary or defeat a legitimate

right of recovery . . .. Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). One of the factors to consider in applying judicial estoppel is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Maine, 532 U.S. at 751 (citing Davis, 156 U.S. at 689); Philadelphia, W., & B.R. Co. v. Howard, 13 How. 307, 335-337 (1851); Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953). "In short, considerations of equity persuade[s the Court] that application of judicial estoppel is appropriate in this case." Maine, 532 U.S. at 751.

Furthermore, the homeowners are not present in this action to present arguments as to the warranties. It may be that the homeowners are indispensable parties under Federal Rule of Civil Procedure 19,[8] but at this late stage and given the sheer number of homeowners, it may not be feasible to join all interested homeowners. However, Rule 19 further indicates that the court may, in determining whether to proceed only with the existing parties, consider "the extent to which any prejudice [due to the failure to join a required party] could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures." Fed. R. Civ. P. 19(b)(2). As Jeld-Wen points out, the homeowners may have various legal arguments that could demonstrate the warranties were not valid or enforceable. The Court agrees with Jeld-Wen that this would result in an inequitable outcome as the homeowners are not present in this

---

[8]See Fed. R. Civ. P. 19 (indicating that a person subject to service of process who will not deprive the court of subject-matter jurisdiction must be joined if in his absence complete relief among existing parties cannot be accorded or that person claims an interest relating to the subject of the action and disposing of the action may impair that person's ability to protect his interest or leave an existing party subject to multiple or inconsistent obligations).

action to assert those arguments and potential inconsistent obligations against Jeld-Wen could arise.  Protective measures may therefore be imposed to avoid dismissal of this action and prejudice to the homeowners.  However, Jeld-Wen will thus be estopped in any proceedings brought by homeowners from using the warranties as an affirmative defense.

Jeld-Wen argues that the warranty did not conform to its terms, as the defective resin was present the moment the sale took place from Jeld-Wen to the homeowners, and thus cannot serve as a bar to recovery.  However, as explained above, causation still remains an issue.  Therefore, this Court finds that for any unit for which it is established that the defective resin was the proximate causation of damages, the Jeld-Wen Caradco and Pozzi warranties, even though expired or held by a second homeowner, are not a bar to recovery.  This also encompasses the limited remedies afforded by the warranties–thus, payments above the terms of the warranties, such as for installation and labor, are also not available as an affirmative defense to decrease recovery.  Glasslam, as stated above, has been found to have breached the contract and warranties with Jeld-Wen, and thus, if proximate cause is shown, it owes damages to Jeld-Wen.

## C.  Glasslam's Motions for Partial Summary Judgment

### 1.  Glasslam's Third-Party Claims Against Reichhold

Glasslam requests partial summary judgment in its favor on its claims against Reichhold as to the breach of contract and breach of warranty counts.  Glasslam points out that in both Glasslam II and Jeld-Wen I, the parties were precluded from relitigating the issue of whether Reichhold breached its contract and warranties by supplying defective resin.  Therefore, in this case as well, Reichhold should be precluded from relitigating the issues on Counts I through III of its Cross-Claim.  Glasslam indicates that causation remains an issue in terms of whether Jeld-

Wen's damages were caused by the resin that Reichhold supplied to Glasslam, but the claims Glasslam has against Reichhold are entitled to partial summary judgment.  In response, Reichhold argues that collateral estoppel cannot be asserted as to issues that were not previously litigated–which is the proximate cause of the damages claimed by Jeld-Wen.  Glasslam points out in reply that it has not argued that Reichhold should not be entitled to contend at trial that Jeld-Wen's damages were caused by other factors, not the resin–indeed that is an argument asserted by Glasslam as well.  However, the causation issue is separate from the relief Glasslam seeks regarding the defective resin.

As held in the previous cases, it has previously been litigated and established that Reichhold breached its contract and warranties with Glasslam by failing to supply resin with the required ultraviolet blocker.  The issue of causation of Jeld-Wen's damages is separate from these counts and as discussed in section B(1) and (2) *supra*, remain to be litigated at trial.  In Glasslam II, the Court concluded that collateral estoppel precluded relitigation of the issue of whether the resin was defective but did not preclude litigation on causation issues.[9]  The Court concluded that there were no new facts which would alter the ultimate fact determined in Glasslam I that Reichhold  breached its duty under the parties' contract and under implied and express warranties by providing Glasslam with defective resin.  Glasslam II, 05-60704-CIV, [DE-108 at 14-15] (S.D. Fla. Oct. 30, 2006).  The Court stated that

---

[9]The doctrine of collateral estoppel operates to preclude relitigation of an issue where: 1) the issue at stake is identical to the one involved in the prior proceeding; 2) the issue was actually litigated in the prior proceeding; 3) the determination of the issue in the prior litigation must have been a 'critical and necessary' part of the judgment in the first action; and 4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000).

> "[t]he facts underlying the finding that the resin produced by Reichhold for Glasslam was defective have not changed and thus this ultimate fact – that the resin is defective – should not be disturbed . . .  The issue of Reichhold's breach of contract and expressed and implied warranties is identical to that same issue in Glasslam I . . . the jury's finding of breach was a 'critical and necessary' part of the judgment in Glasslam I, as a finding that Reichhold breached duties owed to Glasslam was critical to its ultimate finding that those breaches were the proximate cause of damages to Glasslam."

Glasslam II, at 15.

This Court went on to explain that changed factual circumstances would prevent application of collateral estoppel as to the issue of causation.  The Court stated that "[a]lthough the jury in Glasslam I found causation for all customers in that case, there are many variables that might lead another jury to a different outcome as to the windows at issue in this case."  Thus, the Court concluded that Reichhold had not had an opportunity to litigate the issue of causation as to the particular claims involved in Glasslam II and collateral estoppel should not bar litigation of that issue.  Similarly, the Court found that Reichhold was not precluded from litigating themes of bad installation or bad fabrication as they relate to causation.  Id. at 17.  The same holding applies in this case, thus, Glasslam is entitled to partial Summary Judgment on Counts I, II, and III, though actual causation of damages to Jeld-Wen remains to be litigated at trial.

### 2. Glasslam's Motion against Plaintiff Jeld-Wen

#### a) Count IV: Unjust Enrichment

Glasslam moves for summary judgment as to Jeld-Wen's claim for unjust enrichment. Under Florida law, quantum meruit damages–an equitable remedy used to provide restitution in unjust enrichment claims–cannot be awarded when an enforceable contract exists.  Webster v. Royal Caribbean Cruises, Ltd., 124 F. Supp. 2d 1317, 1326-27 (S.D. Fla. 2000) (citing Corn v. Greco, 694 So. 2d 833, 834 (Fla. 2d DCA 1997); Cross v. Strader Constr. Corp., 768 So. 2d 465,

466 (Fla. 2d DCA 2000)).  "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." Id. (quoting Gary v. D. Agustini & Asociados, S.A., 865 F. Supp. 818, 827 (S.D. Fla. 1994)).  Since Jeld-Wen has an adequate legal remedy in its breach of contract claim, a claim for unjust enrichment is not available here.

Jeld-Wen argues, however, that as demonstrated in Jeld-Wen I, it may not have an adequate remedy at law.  Its argument focuses on Glasslam's assertion of the expired warranties during the trial in Jeld-Wen I.  However, this does not preclude entry of summary judgment on this count.  First, the Court has indicated that Jeld-Wen I may be retried, depending on the actions by the Eleventh Circuit.  Thus, this Court is not persuaded by actions taken in those proceedings.  Furthermore, though Jeld-Wen may dispute the merits of the warranty arguments, which this Court has noted *supra* will not be permitted in the instant case, this does not mean an adequate remedy at law is not available.  Simply because it did not receive the jury award it would have preferred on the breach of contract damages it asserted in the previous litigation does not mean it may now avoid the contract and seek a claim for unjust enrichment.  The enforceable contract exists and thus unjust enrichment is not available.

_____b)  Misrepresentation and Fraud Counts

Glasslam seeks summary judgment on Jeld-Wen's claims for (V) Innocent Misrepresentation[10]; (VI): Negligent Misrepresentation; and (VII) Fraud.  Glasslam argues that

_____

[10]As this Court stated in its Order on Reichhold's Motion to Dismiss, Section 522(C) of the Restatement (Second) of Torts, which sets forth the tort of innocent misrepresentation, has never been adopted in Florida.  See Reporter's Note, Restatement (Second) of Torts § 552(C) (indicating that Florida is one of the jurisdictions that has not accepted the rule thus far).  In response, Jeld-Wen argues that innocent misrepresentation is recognized in Florida, and cites to cases, such as Langley v. Irons Land & Dev. Co., 114 So. 769 (Fla. 1927), which allow for rescission and cancellation in equity when there has

24

these claims are barred by the doctrines of *res judicata* and collateral estoppel.  Even if those doctrines are not a bar, Glasslam further argues that the economic loss rule bars the claims. Glasslam also argues that on the merits of the claims it is entitled to summary judgment, as Jeld-Wen has failed to present evidence of a genuine issue of material fact.  Jeld-Wen argues that the claims are not precluded as the claims relate to separate conduct.  The claims indicate that Glasslam failed to inform Jeld-Wen of the defective resin when it learned of the problem in October 2001.  Jeld-Wen also argues that the fraud claim relates in part to the conduct of Glasslam and Reichhold in Glasslam I, Glasslam II, and Jeld-Wen II and that as these were actions that occurred outside of or after execution of the contract, the economic loss rule does not apply.  Jeld-Wen points to testimony by Howes in his deposition that the resins Glasslam received through Polyguard had different tints depending on the resin used, thus he should have known that Reichhold had changed something in the formulation of the resin.  Additionally, Jeld-Wen argues that the "other property" exception to the economic loss rule applies and thus the claims are not barred by the rule as property other than the product itself has been damaged.

The Court finds that as it has determined that Jeld-Wen's arguments for a new trial in

---

been a misrepresentation of material facts, even though innocently made.  Langley v. Irons Land & Dev. Co., 114 So. 769, 771 (Fla. 1927).  Jeld-Wen also cites to Guaranty Bank, S.S.B. v. Heimann, 683 So. 2d 1082 (Fla. 5th DCA 1996) to support its argument that damages can also be awarded for reliance on an innocent misrepresentation.  The Court does note that in Guaranty Bank, the court used "innocent misrepresentation" interchangeably with "negligent misrepresentation."  Guaranty Bank, 683 So. 2d at 1083.  In fact, in Held v. Trafford Realty Co., 414 So. 2d 631 (Fla. 5th DCA 1982), the court indicated that the effect is the same, whether the misrepresentations are made innocently or knowingly–it is grounds for a rescission of a contract.  Held, 414 So. 2d at 632.  Jeld-Wen, however, is not seeking rescission of its contract with Glasslam, it is seeking damages. The Court held in its Order on Reichhold's Motion to Dismiss that it did not find it necessary to expand a cause of action that appears to be limited to rescission of contracts and real property–especially in light of Jeld-Wen's inability to point to definitive case law on the subject.

Jeld-Wen I have merit, it will not apply the doctrines of *res judicata* and collateral estoppel to bar the claims in this action.  However, the rulings by the Court in that case are equally applicable to the misrepresentation and fraud claims in this case.  The economic loss rule bars causes of action in tort for purely economic losses between parties to a contract, where the defendant "has not committed a breach of duty apart from a breach of contract."  Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004); see also AFM Corp. v. S. Bell. Tel. & Tel. Co., 515 So. 2d 180, 181 (Fla. 1987) (tort must be "distinguishable or independent of [the] breach of contract") (quoting Lewis v. Guthartz, 428 So. 2d 222, 224 (Fla. 1982)).  The rationale prohibiting recovery of solely economic damages in a tort action where there is contractual privity is meant "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  Id. (citing Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.")).

The Court agrees with Glasslam that Jeld-Wen fails to provide facts separate and distinct from its breach of contract claim and that the claim is therefore barred by the economic loss doctrine.  In Glasslam I and Glasslam II, this Court concluded that Glasslam's claims for negligent misrepresentation and fraudulent inducement were likewise barred by the economic loss rule.  The Court held that Reichhold's alleged misrepresentations in those cases were so interwoven with the parties' agreement that there was no independent tort.  Glasslam I, 02-60703-CIV, [DE-14 at 2] (S.D. Fla. Dec. 3, 2002); Glasslam II, 05-60704-CIV, [DE-108 at 9-10] (S.D. Fla. Oct. 30 2006); see Premix-Marbletite Mfg. v. SKW Chems., Inc., 145 F. Supp. 2d

1348, 1358-59 (S.D. Fla. 2001) ("When the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies.").  Similarly, Plaintiff's claim for fraud here does not survive the economic loss rule.  The alleged misrepresentations regarding the resin go to the heart of the contractual agreement and do not state an independent tort.  See e.g., John Brown Automation, Inc. v. Nobles,  537 So. 2d 614, 617-18 (Fla. 2d DCA 1988) (holding the negligent misrepresentation claim was barred because the "misrepresentation ascribed to the appellants is inherent in and inextricable from the events constituting a breach of the contract.").  Jeld-Wen's contention that Glasslam failed to disclose the defect in the resin is interwoven with the contract and thus does not state an independent tort.

Jeld-Wen also argues that Glasslam made misrepresentations by limiting the scope of the presentation of evidence in Jeld-Wen I and by settling in Glasslam II.  However, any arguments Jeld-Wen has as to conduct during the trials are not appropriate–Florida law provides absolute immunity from tort claims based on a party's conduct during the course of litigation.  Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co., 470 F.3d 1036, 1040 (11th Cir. 2006) (citing Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1302-03 (11th Cir. 2003) and upholding summary judgment in that case, as the allegations were premised on the manner in which the opposing party conducted core litigation activities).

Additionally, the Court notes that the damages sought in both Plaintiff's breach of contract claim and Plaintiff's fraud claim are identical.  Although the issue of damages alone is not determinative, it is a factor to be considered in applying the economic loss rule.  See Premix, 145 F. Supp. 2d at 1358 ("[W]hat determines the applicability or non-applicability of the

27

economic loss rule is the interplay of (a) the contractual relationship of the parties, (b) the

conduct complained of, and (c) the damage caused by the allegedly tortious conduct.").

     Jeld-Wen also argues that the failed resin damaged more than itself–it damaged windows

and doors.  However, the windows and doors would not be considered "other property" as they

were a fully integrated product.  See Casa Clara Condominium Ass'n v. Charley Toppino and

Sons, Inc., et al., 620 So. 2d 1244, 1248 (Fla. 1993) (refusing to apply "other property" exception

for homeowners against manufacturer of cement because the concrete was an integral part of the

finished product); Turbomeca, S.A. v. French Aircraft Agency, Inc., 913 So. 2d 714, 717 (Fla. 3d

DCA 2005) ("Courts have refused to bifurcate products into parts where a component part harms

or destroys the finished product).  In Casa Clara, the Florida Supreme Court held that homes

damaged by defective concrete did not constitute other property as the concrete was an integral

part of the finished products purchased by the owners.  Casa Clara, 620 So. 2d at 1247.

Similarly, in the present case, the resin is an integral part of the finished product–the windows

and doors.

     In addition, Jeld-Wen argues that the plaintiffs in a class action against it have alleged

damages that extend beyond the resin, the glass, and the windows and doors.  See Jones, et al. v.

Jeld-Wen[11], 07-22328-CIV-DIMITROULEAS (S.D. Fla. filed Sept. 5, 2007).  However as

indicated in this Court's Order on Reichhold's Motion to Dismiss, Jeld-Wen's Complaint in the

instant action does not assert damages beyond the windows and doors.  In the Complaint, Jeld-

Wen indicates that it "has received, and will receive, complaints from customers regarding its

*windows and/or doors* manufactured using Glasslam's and/or Reichhold's resin and Safety Plus

---

[11]Jeld-Wen has asserted a Third-Party Complaint against Glasslam and Reichhold in that case.

Laminated Glass products." Complaint, para. 52, page 7 (emphasis added).  Jeld-Wen asserts that

as a proximate result of Defendants' acts and omissions it has suffered damages for the

replacement and/or repair costs of *windows and doors*.  The Complaint further states that to

"address customers' complaints and to protect its interests, JELD-WEN provided services and/or

products to the consumers/purchasers/owners of *windows and/or doors* that incorporated [the]

resin and [Safety Plus] products." [Complaint, para. 155, page 25 (emphasis added)].  Therefore,

in this case, the economic loss rule applies as there are no other products alleged to have been

damaged.  To the extent that the Jones case may raise such issues, that will be determined within

that case and not in the instant action.

        c)  Constructive Trust

      Glasslam argues that it is entitled to summary judgment on Jeld-Wen's claim for a

constructive trust.  Glasslam asserts that no evidence demonstrating an entitlement to a trust

exists.  Jeld-Wen counters that Glasslam received a large verdict against Reichhold, in part for

lost profits, and settled with Reichhold in Glasslam II, yet has failed to pay all of its customers

with those proceeds.  Jeld-Wen also argues that as part of Glasslam's recovery for lost profits

was based on profits stemming from Jeld-Wen sales, it is entitled to a constructive trust.

      The Court does not find that Jeld-Wen has established any evidence that would indicate it

may impose a constructive trust against Glasslam.  "A constructive trust is one raised by equity in

respect to property which has been acquired by fraud, or where, though acquired originally

without fraud, it is against equity that it should be retained by him who holds it." Quinn v.

Phipps, 113 So. 419, 422 (1927).  First, in the instant case, the property Jeld-Wen is claiming

right to under a constructive trust claim is the money Glasslam received both as a jury award in

Glasslam I, as well as the settlement reached with Reichhold in Glasslam II. Jeld-Wen has not pointed to any evidence that Glasslam obtained the jury award or settlement through fraud, thus Jeld-Wen fails to satisfy the requisite element. Money obtained through settlement of a lawsuit is not obtained by fraud. In re Chauncey, 454 F.3d 1292, 1294 (11th Cir. 2006). Furthermore, as discussed in the context of the economic loss rule, a remedial device is not warranted in the instant case where Jeld-Wen has valid legal claims under breach of contract and breach of warranties. Jeld-Wen cannot assert a claim for constructive trust, an element of which is unjust enrichment, to achieve an end-run around the ruling that the unjust enrichment claim is barred by the economic loss rule. Glasslam's management of the jury award and settlement are not at issue in this case. Jeld-Wen cannot properly bring a claim for constructive trust in the instant case in which it has failed to satisfy the requisite elements as a matter of law.

d)  Equitable Lien

Similarly, Jeld-Wen seeks to impose an equitable lien on the award and settlement Glasslam previously received. An equitable lien may arise from written contracts that show an intention to charge some particular property with a debt or obligation. Equitable liens may also be declared by a court of equity out of general considerations of right or justice as applied to the relationship of the parties and the circumstances of their dealings. In re Cameron, 359 B.R. 818, 822 (Bkrtcy. M.D. Fla. 2006) (citing Ross v. Gerung, 69 So. 2d 650 (Fla. 1954)). To be entitled to an equitable lien, there must be circumstances such as fraud or misrepresentation of material facts upon which the plaintiff specifically relied in good faith or there must be an agreement by the owner of the property to have certain property stand as security for a specific obligation. Jennings v. Connecticut General Life Insurance Co., 177 So. 2d 66 (Fla. 2d DCA 1965). The

30

Eleventh Circuit Court of Appeals has explained that under Florida law only monies obtained

through fraud or egregious conduct may permit the imposition of an equitable lien.  In re

Chauncey, 454 F.3d at 1294.

As a matter of law, Jeld-Wen cannot sustain a claim for equitable lien against Glasslam.

The award in Glasslam I and settlement in Glasslam II were for Glasslam's damages for lost

profits and for the debts owed to customers who had made claims by that point–not a fund from

which Glasslam could later pay future claims.  See e.g., Nebula Glass Int'l, Inc. v. Reichhold,

Inc., 454 F.3d 1203, 1211 11th Cir. 2006) (indicating that Glasslam was only entitled to damages

for claims for which Glasslam had received specific complaints and had identified in its answers

to interrogatories); Glasslam I, Summary Judgment Order [DE-113 at 12-14], Case No. 02-80703

(S.D. Fla. April 28, 2004).[12]  Jeld-Wen has not pointed to any evidence that its claims were

included in Glasslam I.  Furthermore, Jeld-Wen's arguments that it fears Glasslam will be unable

to pay any judgment entered against it in this suit are unavailing.  Lawhon v. Mason, 611 So. 2d

1367, 1368 (Fla. 2d DCA 1993) (court cannot enforce a money damages judgment before it is

rendered or prevent a party from disposing of assets prior to the conclusion of an action at law).

Finally, as discussed above in relation to the claim for constructive trust, Jeld-Wen has pointed to

no evidence that the money was obtained through fraud.

e)  Equitable Subrogation

Jeld-Wen asserts a claim for equitable subrogation, alleging that in order to protect its

own interests, it addressed customer complaints regarding windows and doors incorporating the

---

[12]This applies equally to the claim for constructive trust, in addition to the lack of evidence of
fraud.

Reichhold resin and Glasslam products.  Thus, by doing so, the rights of the property owners have been equitably assigned to Jeld-Wen, who is not liable itself for the debt.  Glasslam argues that the claim is redundant as the claims are included in its contract claims.  Furthermore, Glasslam asserts that Jeld-Wen cannot produce evidence that it was not without fault for damages to windows and doors, thus its claim for equitable subrogation fails. Jeld-Wen argues in response that Reichhold and Glasslam are entirely responsible for the damages.

In Dade County School Board v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999), the court held that equitable subrogation is generally appropriate when the following five factors exist: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. Thus, equitable subrogation arises when an innocent party pays the debt that should have been paid by another.

Factual issues remain as to the third element–whether Jeld-Wen was not primarily liable for the debt.  Glasslam argues that Jeld-Wen is primarily responsible to its customers for the defective product and points to the jury's findings in Jeld-Wen I.  However, there are different houses and customers at issue in this case–as the Court has reiterated many times, causation remains an issue as to each home.  As there are variables that differ in regards to each house in terms of whether the resin caused the damages, there are also individual issues as to whether Jeld-Wen was primarily liable for the problems with these products.  Thus, a factual issue remains on this claim and summary judgment is not appropriate.

f)  Equitable Assignment

Count XI seeks an equitable assignment of a portion of the award and settlement Glasslam obtained in <u>Glasslam I</u> and <u>Glasslam II</u>.  Glasslam argues that Jeld-Wen has failed to introduce any facts evidencing that there was an intention to assign any rights to the award or settlement.  As discussed above, the claims at issue in the previous litigation between Glasslam and Reichhold did not involve Jeld-Wen's claims.  However, Jeld-Wen argues that it deserves the benefit of its bargain with Glasslam for non-defective resin, thus an equitable assignment of the funds should be established.

Courts may find an equitable assignment in order to effectuate the parties' plain intent or to avoid injustice.  <u>SourceTrak, LLC v. Ariba, Inc.</u>, 958 So. 2d 523, 526 (Fla. 2d DCA 2007).  "No particular words or form of instrument is necessary to effect an equitable assignment[,] and any language, however informal, which shows an intention on one side to assign a right or chose in action and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment."  <u>Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic</u>, 913 So. 2d 1281, 1288 (Fla. 2d DCA 2005) (quoting <u>Giles v. Sun Bank, N.A.</u>, 450 So. 2d 258, 260 (Fla. 5th DCA 1984)).  The Court agrees with Glasslam and finds that this count should be dismissed.  As indicated in this Court's Order on Defendant Reichhold's Motion to Dismiss, Jeld-Wen has not pointed to any facts that suggest that Glasslam intended to assign the proceeds it obtained in the previous litigation to Jeld-Wen, nor that there was consideration paid for such an assignment.  The consideration Jeld-Wen initially paid in its contract with Glasslam was for the resin, not for the rights to an assignment of the jury awards or settlement funds.  Thus, summary judgment in favor of Glasslam on this count is appropriate.

33

g)  Equitable Indemnity

Jeld-Wen also asserts a claim for equitable indemnity for addressing customer claims as a result of the defective resin.  Glasslam argues that Jeld-Wen cannot prove that it has no direct potential fault and thus summary judgment should be granted in its favor.

To succeed on a claim for indemnity, it must be demonstrated that 1) the party seeking the indemnity is without fault and 2) the indemnity is only from the party at fault.  Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 642 (Fla. 1999).  In addition, Florida law imposes an additional requirement–that there be a special relationship between the parties.  Id. Again, factual issues remain as to whether Jeld-Wen is at fault in terms of the products at issue in this case.  Therefore, summary judgment is not appropriate.

h)  Implied Contractual Indemnity

In Count XIII, Jeld-Wen asserts a claim of implied contractual indemnity, alleging that Glasslam failed to use reasonable care in providing the resin, resulting in Jeld-Wen's damages. Glasslam argues that Jeld-Wen has failed to introduce any evidence inferring that Glasslam would bear responsibility for any problems faced by Jeld-Wen customers.  In addition, Jeld-Wen is unable to prove that it was not at fault for the damages, thus precluding indemnity.  In response, Jeld-Wen argues that the duty to indemnify was implied by the special relationship between the parties–the licensor-licensee relationship.

Implied contractual indemnity arises where there are "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety, or where there is a generally recognized special

34

relationship between the parties." <u>Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc.</u>, 706 F.2d 349, 353 (1st Cir. 1983) (citing <u>TransDulles Center Inc. v. USX Corp.</u>, 976 F.2d 219, 228 (4th Cir. 1992)). The party alleging the claim has a heavy burden of showing an implied agreement by the potential indemnitor to indemnify it. <u>Triguero v. Conrail</u>, 932 F.2d 95, 101 (2d Cir. 1991).

Jeld-Wen has not pointed to any evidence that there was an implied agreement by Glasslam to indemnify it.  Thus, summary judgment is appropriate in favor of Glasslam on this count.  Jeld-Wen argues that the special relationship that existed between itself and Glasslam by virtue of the licensing contract is a sufficient ground to assert a claim for implied contractual indemnity.  However, this would seem to meld the equitable indemnity and implied contractual theories.[13]  In any event, the equitable indemnity claim already addresses the potential indemnity

---

[13] <u>See e.g.</u>, Philip L. Bruner & Patrick J. O'Connor, Jr., <u>Bruner & O'Connor on Construction Law</u> § 10:110:

> Implied indemnity comes in two forms: (1) implied-in-fact, and (2) implied-in-law.  Implied-in-fact indemnity, sometimes referred to as implied contractual indemnity, is grounded in contract theory. On the other hand, implied-in-law indemnity, sometimes referred to as equitable indemnity, is ground in equity. While both indemnity rights are implied, the focus of inquiry is quite different. Under implied contractual indemnity, the focus is upon the intent of the parties. With equitable indemnity, the focus is on the nature of the relationship between the indemnitor and indemnitee, i.e., the relative degrees of culpability or the derivative/vicarious aspects of the relationship.  The existence of a particular "relationship" between indemnitee and indemnitor is also a significant factor in determining whether implied contractual indemnity exists. The role the relationship plays has generated some confusion in this area, which can be avoided by keeping in mind that implied-in-fact indemnity always depends upon the parties' intentions. . . In sum, while both implied contractual indemnity and equitable indemnity arise from the relationship existing between indemnitor and indemnitee, the focus of the former is the parties' intentions, whereas the latter is the role played by each party in the injury that gives rise to the claim of indemnity.

As explained above, Jeld-Wen has pointed to no evidence that there was an intention between the parties that Glasslam would indemnify Jeld-Wen for any customer problems.

arising between the parties, therefore, in light of the lack of an implied duty in the contract, this claim is redundant.  See e.g., Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), overruled on other grounds, Manders v. Lee, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003), (indicating that a claim should have been dismissed on summary judgment by district court, "irrespective of its merits," because it was redundant).

i)  Breach of Covenant of Good Faith and Fair Dealing

Glasslam argues that Jeld-Wen cannot sustain a claim for breach of covenant of good faith and fair dealing.  Jeld-Wen's Complaint does not indicate a breach of an express term of the contract to which the duty would apply.  Any complaints Jeld-Wen has as to the defective resin are subsumed under its breach of contract claim.  Jeld-Wen argues that the ten-year guaranty of the resin implied a duty of good faith to disclose any defect.  In order to give effect to Jeld-Wen's reasonable expectations, Glasslam would have to inform of any defects.  As Glasslam did not disclose the defect at the time it learned of it, Glasslam breached the covenant of good faith and fair dealing.

"[T]he implied covenant of good faith and fair dealing is a part of every contract under Florida law.  Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1291 (11th Cir. 2001); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir.), cert. dismissed, 528 U.S. 948 (1999).  It is not an independent term, however, it "attaches ... to the performance of a specific contractual obligation." Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1314 (11th Cir.1998); see also, Speedway SuperAmerica, LLC v. Tropic Enterprises, Inc., 966 So. 2d 1, 3 (Fla. 2d DCA 2007).  The obligation of good faith is one that is imposed on contracting parties to regulate their execution of the terms of a contract; it is not used to alter the

parties' rights and obligations under those terms.  Revenue Markets, Inc. v. Amwest Sur. Ins. Co., 35 F. Supp. 2d 899, 906 (S.D. Fla. 1998) (citing In re General Plastics Corp., 158 B.R. 258, 286 (Bankr. S.D. Fla. 1993)); Burger King Corp. v. Holder, 844 F. Supp. 1528, 1530 (S.D. Fla. 1993) ("[T]he 'covenant' [of good faith] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract ....")).

Jeld-wen has not pointed to any express provision in the contract requiring Glasslam to disclose a defect.  Therefore, Glasslam could not have breached the covenant of good faith in executing this term–there was no express provision to which the duty attached.  Accordingly, as a matter of law, summary judgment in Glasslam's favor is appropriate.

## D.  Reichhold's Motion for Summary Judgment

In Defendant/Third-Party Defendant Reichhold's  Motion for Partial Summary Judgment against Jeld-Wen, Reichhold argues that Jeld-Wen should be precluded as a matter of law from bringing claims for unrepaired units, historical claims for houses at issue in Jeld-Wen I, houses with expired warranties, claims brought by second homeowners, damages for costs precluded by Jeld-Wen's warranties, costs for its Product Integrity Group, and lost profits.  Each of these will be addressed in turn.

### 1.  Claims at Issue

Reichhold argues that Jeld-Wen is barred from bringing claims that could have been brought in Jeld-Wen I.  The first of these claims are historical homes that were repaired before, but not raised, in Jeld-Wen I.  Jeld-Wen counters that it was unable to ascertain those claims at the time because, prior to being notified of the defective resin in the Fall of 2004, it had not kept

track of repairs/replacements made that could have been due to the defective resin.  Reichhold points to this Court's Order in Jeld-Wen I, which *permitted* claims for homes repaired prior to the July 11, 2006 Order.  Jeld-Wen I, Case No. 05-60860 [DE-306, p.3] (S.D. Fla. May 17, 2007).  However, the Order in no way indicated that Jeld-Wen must present those claims at that time or be barred.  Id.  Thus, those historical claims may be presented.

Reichhold also seeks to bar damages for additional repairs conducted after Jeld-Wen I for homes that were adjudicated in that case.  Similar to what occurred in Glasslam II, Reichhold's argument regarding the claims in the instant matter runs contrary to its prior position and to the Court's prior ruling.  Reichhold previously sought to limit the damages which Jeld-Wen could seek to only specific, accrued claims that were repaired and inspected by Defendants prior to the end of discovery.  See Jeld-Wen I, Case No. 05-60860 [DE-306, p.4] (S.D. Fla. May 17, 2007) (ruling that Jeld-Wen "is limited at trial to asserting claims for premises which were repaired and inspected by Defendants prior to the end of discovery and claims for costs of repairs made prior to the entry of the Court's July 11, 2006 Order.").  Reichhold cannot now argue that Jeld-Wen should have sought in the prior action those very claims it moved the Court to exclude in that case.  These claims were not specific and accrued at that time and thus, may appropriately be brought in this case.  This is not a "second bite at the apple" as Reichhold contends.  As has been explained by this Court numerous times, causation as to each product remains an issue for trial.  Jeld-Wen may have litigated certain glass units within a home during Jeld-Wen I, but remaining units that have since been repaired that were not previously litigated are not excluded from the same causation analysis in this case.

As for the cut-off of the claims in this case, Reichhold argues that only houses where

repairs have already been made should be allowed.  According to Reichhold, Jeld-Wen can only

assert damages once it incurs costs to replace windows and doors.  Reichhold points to this

Court's Order in <u>Jeld-Wen I</u>, limiting claims to those units for which Defendants had an

opportunity to conduct discovery after Jeld-Wen repairs.  <u>Jeld-Wen I</u>, Case No. 05-60860 [DE-

306, p.4] (S.D. Fla. May 17, 2007).  However, the circumstances differ in this case than from

what occurred in <u>Jeld-Wen I</u>.  In <u>Jeld-Wen I</u>, a protocol advocated by Jeld-Wen was imposed by

this Court in a July 11, 2006 Order.  <u>Jeld-Wen I</u>, Case No. 05-60860 [DE-76] (S.D. Fla. July 11,

2006).  According to that protocol, Defendants were precluded from engaging in any discovery,

other than attending Jeld-Wen scheduled inspections, repairs, and replacements, at homes where

Jeld-Wen had not completed inspections, repairs, and replacements.  Thus, the Court held that it

would be unfair for Jeld-Wen to bring claims in that case for which Defendants had not had an

opportunity to conduct discovery.  <u>Jeld-Wen I</u>, Case No. 05-60860 [DE-306] (S.D. Fla. May 17,

2007).  However, as early as August 17, 2007, the parties were on notice that the July 11, 2006

protocol only applied to <u>Jeld-Wen I</u>, as stated in this Court's Order denying, as moot, Jeld-Wen's

Motion to Vacate the protocol.  <u>Jeld-Wen I</u>, Case No. 05-60860 [DE-396] (S.D. Fla. Aug. 17,

2007).  In addition, on February 14, 2008, Magistrate Rosenbaum also noted the August 17, 2007

Order, in denying Defendants' request to impose a similar protocol in this case. [DE-146]. The

Magistrate's Order pointed out that Defendants do not face similar obstacles in this case, as Jeld-

Wen was not seeking to limit Defendants' contact with its customers.

Thus, Defendants have been free to conduct discovery on the homes at issue in this case.

Particularly relevant is language in the Magistrate's February 14, 2008 Order: "In the absence of

any reason to limit Defendants' contacts with Jeld-Wen's customers, the Court declines to

confine Defendants' ability to conduct discovery regarding Jeld-Wen's customers.  Thus should Defendants choose not to take advantage of the ability to conduct discovery with respect to Jeld-Wen's customers whom Jeld-Wen has not yet contacted to schedule inspections or repairs, they do so at their own risk." [DE-146, p. 21].  Therefore, to adopt Defendants' view could lead to the possibility that claims would be excluded simply because Defendants chose not to conduct any discovery on them.  Thus, as long as the claims are specific and known in order for discovery to have been conducted, simply because the repairs have not been conducted is not a bar to recovery of expected future damages.  Similarly, in Glasslam I, the Eleventh Circuit upheld this Court's ruling that Glasslam could properly recover damages for legitimate claims that were made, even though not yet paid by Glasslam.  Nebula Glass Int'l, Inc. v. Reichhold, Inc., 454 F.3d 1203, 1212-13 (11th Cir. 2006) (under Florida law, future economic damages are recoverable if established with reasonable certainty).  It still remains to be proven at trial that those particular pieces were damaged as a result of the defective resin.

As for the number of houses that Jeld-Wen can present at trial, in Reply to Jeld-Wen, Reichhold noted that an opportunity to inspect properties was not sufficient grounds to allow all the homes Jeld-Wen put forth to be presented at trial, as the list "has always been a moving target." [DE-389, p. 5 n. 6].  However, the Court has reviewed Jeld-Wen's produced lists.  They are as follows:

1) 12/18/2007 List: 369 homes, with 21,337 units of glass [DE-449-3]

2) 2/4/2008 List: 398 homes, with 21,990 units of glass [DE-449-4]

3) 3/18/2008[14] List: 468 homes, with 25,459 units of glass [DE-449-5]

4) 3/19/2008 List: 413 homes, with 23,232 units of glass [DE-449-6]

5) 3/21/2008 List: 481 homes, with 26,236 units of glass [DE-449-9

6) 3/27/2008 List: 485 homes, with 26,844 units of glass [DE-449-11]

Discovery closed on March 27, 2008.  Though the final list had 161 homes that were not on the first produced list, the subsequent lists had incorporated most of those missing homes, thus putting Defendants on notice of a substantial majority of the homes prior to the end of discovery. The February 4, 2008 List contains 71 of the missing 161 homes, while an additional 63 are listed on the March 18, 2008 List.[15]  The March 21, 2008 List added an additional 21 homes, and was only missing 4 homes that were on the final March 27, 2008 List.  Only 42 homes that were on the first December 18, 2007 list were not included on the final list–the intervening lists, beyond adding homes, did not substantially detract homes already produced.  Thus, the Court finds that the lists were not so shifting as to prejudice Defendants in conducting discovery.  In addition, Reichhold is asking for a limitation on the houses and cites to Jeld-Wen's continuously changing list, yet has not provided evidence that it diligently inspected all homes on the first list and was prejudiced by the updates and changes in subsequent lists.  Reichhold has not explained the efforts it undertook in discovery on the houses presented by Jeld-Wen, such that it was unable to conduct the same efforts in the later disclosed homes.  Reichhold also never sought to impose a cut-off date for the list of homes.  Therefore, the Court finds that Jeld-Wen may present the

---

[14]Jeld-Wen indicates that it reproduced this list on March 24, 2008 as the previous copy had been illegible. [DE-449, p. 3 n.3].

[15]In fairness to Defendants, homes without addresses were not considered.

claims on the final March 27, 2008 List at trial

### 2. *Warranties*

For the reasons discussed in section II(B)(3), *supra*, Reichhold's Motion for Partial Summary Judgment as it pertains to the warranties is denied.

### 3. *PIG Damages*

Reichhold argues that it is entitled to summary judgment as to Jeld-Wen's claims for the costs of its Product Integrity Group ("PIG").  Reichhold argues that the same calculations were excluded in Jeld-Wen I, for being too speculative and for not being tied to the individual homes on trial in that case.  According to Reichhold, the calculations are based on estimations of the approximate percentages of time that various employees spent on claims, improper assumptions, and insufficient research relating to damaged reputation and lost sales.  In response, Jeld-Wen only focuses on the ruling by the Court in Jeld-Wen I that the calculations were not tied to the houses at issue and argues that as a larger pool of claims is being asserted in this case, they are permissible.  The Court recognizes the evidentiary ruling made in the first trial, yet does not find that it can be determined as a matter of law that the calculations can be excluded in this trial.  As indicated in the Order denying Reichhold's Daubert Motion to Exclude Kevin Palmer from presenting this testimony, the arguments may be raised at trial. [DE-442].  At that time, the Court may rule consistently with its previous rulings or may find a different result is warranted, should the damages be demonstrated to be non-speculative.

### 4. Lost Profits

Reichhold argues that Jeld-Wen should be precluded as a matter of law from presenting lost profit damages, as they should have been presented in Jeld-Wen I.  Jeld-Wen argues that it should not be precluded–Jeld-Wen I was limited to 77 homes, thus the entire realm of lost profits could not have properly been presented.  The Court does not find that this issue is precluded, particularly in light of this Court's findings that a new trial is warranted in Jeld-Wen I. Therefore, Jeld-Wen is not precluded from presenting evidence of lost profits, though pursuant to Florida law, they cannot be speculative and must be proved with reasonable certainty.  Nebula Glass, 454 F.3d at 1213 (citing W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd., 545 So. 2d 1348, 135051 (Fla. 1989); Twyman v. Roell, 123 Fla. 2 (1936)).

### III.  CONCLUSION

For the aforementioned reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Jeld-Wen's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**:

> a. Jeld-Wen's Motion is granted to the extent it seeks entry of judgment as to the issue of liability on Counts I, II, and III. The issue of causation remains to be litigated at trial, however.

> b. Jeld-Wen's Motion is granted as to the warranty and voluntary payment affirmative defenses.  Jeld-Wen's customer warranties do not preclude recovery on claims for which proximate causation is established.  Defendants are precluded from asserting defenses that any claims for expired warranties, second

homeowners, or remedies beyond the warranty terms are barred.

2) Defendant/Third-Party Plaintiff Glasslam's Motion for Partial Summary Judgment against Defendant/Third-Party Defendant Reichhold is **GRANTED IN PART AND DENIED IN PART**:

> a. liability is established as to Counts I, II, and III, though issues of causation and themes of bad installation and bad fabrication may be relitigated in this action.

3)  Glasslam's Motion for Partial Summary Judgment against Plaintiff Jeld-Wen is **GRANTED IN PART AND DENIED IN PART**:

> a.  Glasslam's Motion is granted as to Counts IV, V, VI, VII, VIII, IX, XI, XIII, and XIV.  These claims are dismissed.

> b.  Glasslam's Motion is denied as to Count X, Equitable Subrogation, and XII, Equitable Indemnity, based on the disputed issues of fact on these claims.

4) Reichhold's Motion for Partial Summary Judgment is **DENIED**:

> a.  Jeld-Wen is not precluded from introducing historical homes, repairs subsequently made on Jeld-Wen I homes, and specific claims put forth on the March 28, 2008 list, though issues of causation remain to be litigated.

> b.  Objections to the Product Integrity Group damages and lost profits may be raised at trial.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida this

5th day of June, 2008.


WILLIAM P. DIMITROULEAS
United States District Judge


Copies furnished to:

Counsel of Record